UNITED STATES, Appellee,

v.

Private First Class Jacques SAINTAUDE, Jr., United States Army, Appellant.

ARMY 9801647.

U.S. Army Court of Criminal Appeals.

7 May 2002.

For Appellant: Mary T. Hall (argued); Captain Stephanie L. Haines, JA (on brief, reply brief, and supplemental briefs).

For Appellee: Lieutenant Colonel Margaret B. Baines, JA (argued); Colonel Steven T. Salata, JA; Lieutenant Colonel Denise R. Lind, JA (on brief); Colonel Steven T. Sala-

ta, JA; Lieutenant Colonel Margaret B. Baines, JA (on supplemental briefs); Colonel Russell S. Estey, JA; Lieutenant Colonel Eugene R. Milhizer, JA; Major Patricia A. Ham, JA; Captain Kelly D. Haywood, JA.

Before CANNER, Senior Judge,
CARTER, and HARVEY, Appellate Military Judges.

## OPINION OF THE COURT

HARVEY, Judge:

A general court-martial composed of officer members [1] convicted appellant, contrary to his pleas, of rape, robbery (two specifications), adultery, and communication of a threat (three specifications), in violation of Articles 120, 122, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 922, and 934 [hereinafter UCMJ]. The convening authority approved the adjudged sentence to a dishonorable discharge, confinement for forty-eight years, forfeiture of all pay and allowances, and reduction to Private E1. The convening authority credited appellant with one hundred and ninety-four days of confinement credit for pretrial confinement served.

In this Article 66, UCMJ, 10 U.S.C. § 866, appeal, appellate defense counsel assert eleven assignments of error and one supplemental assignment of error, and appellant raises two issues for our consideration pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982). Government appellate counsel counter that all assigned errors, including *Grostefon* errors, lack merit and urge us to affirm the findings and sentence. We considered the appellate briefs and supplemental briefs submitted, as well as excellent oral arguments by counsel. We find that the three specifications alleging that appellant communicated threats fail to state an offense. Our decision moots appellant's other four assignments of error pertaining to the specifications alleging communication of threats. We conclude that appellant's defense counsel provided ineffective assistance of counsel during the sentencing phase of his trial: (1) for conceding that appellant's pre-service Florida pleas of *nolo contendere* "with adjudication withheld" were civil convictions; and (2) for failing to investigate and present mitigation evidence. We specifically find that appellant's other allegations of ineffective assistance of counsel are without merit. We will order a sentence rehearing in our decretal paragraph.

### Failure to State an Offense

In Specifications 2–4 of Charge III, appellant was charged with communicating threats to three different soldiers, in violation of Article 134, UCMJ. Specifications 2–4 of Charge III allege that appellant "did, at or near Colorado Springs, Colorado, on or about 1 June 1998, wrongfully communicate to" Private First Class (PFC) Fleming, Private (PVT) Richardson and Special Agent (SA) Perdue, respectively, "a threat." These specifications lack specific threatening words, any explanation of what the threat was, or a description of whom or what was threatened. The defense counsel did not file a motion for a bill of particulars [2] requesting that the military judge order the government to specify the threatening language communicated to PFC Fleming, PVT Richardson, and SA Perdue. The defense counsel also failed to ask the military judge to dismiss Specifications 2–4 of Charge III for failure to state an offense.

The *Manual for Courts–Martial, United States* (1998 ed.) [hereinafter MCM, 1998],

---

1. Colonel (COL) K was appointed as a panel member by Court–Martial Convening Order Number 17, dated 20 October 1997, and was viced by Court–Martial Convening Order Number 17, dated 13 November 1998. The record did not explain why COL K was a member in appellant's court-martial after being excused. After participating in *voir dire* with the other members, COL K was not challenged. His presence as a member does not constitute jurisdictional error. *United States v. Herrington*, 8 M.J. 194, 195 (C.M.A.1980).

2. When a specification is vague or indefinite, a bill of particulars may be used "to inform the accused of the nature of the charge with sufficient precision to enable the accused to prepare for trial" and to protect the accused from "another prosecution for the same offense." *United States v. Williams*, 40 M.J. 379, 381 n. 2 (C.M.A. 1994) (quoting Rule for Courts–Martial [hereinafter R.C.M.] 906(b)(6) discussion). However, "[a] bill of particulars cannot be used to repair a specification which is otherwise not legally sufficient." *Id.*

Part IV, para. 110b, sets forth the elements of communicating a threat as follows:

(1) That the accused communicated certain language expressing a present determination or intent to wrongfully injure the person, property, or reputation of another person, presently or in the future;

(2) That the communication was made known to that person or to a third person;

(3) That the communication was wrongful; and

(4) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Absent from Specifications 2–4 of Charge III is the "certain language expressing" the threat that appellant allegedly uttered or any descriptions concerning whom or what was threatened. Failure to state an offense is a nonwaivable ground for dismissal of a charge. R.C.M. 907(b)(1)(B). "The standard for determining whether a specification states an offense is whether the specification alleges 'every element' of [the offense] 'either expressly or by necessary implication, so as to give the accused notice and protect him against double jeopardy.'" *United States v. Dear*, 40 M.J. 196, 197 (C.M.A.1994) (quoting R.C.M. 307(c)(3)) (other citation omitted). "This is a three-prong test requiring (1) the essential elements of the offense, (2) notice of the charge, and (3) protection against double jeopardy." *Id.; United States v. Bailey*, 52 M.J. 786, 795 (A.F.Ct.Crim.App.1999), *aff'd*, 55 M.J. 38 (2001). "Specifications which are challenged immediately at trial will be viewed in a more critical light than those which are challenged for the first time on appeal." *United States v. French*, 31 M.J. 57, 59 (C.M.A.1990); *see also United States v. Bryant*, 30 M.J. 72, 73 (C.M.A.1990); *United States v. Watkins*, 21 M.J. 208, 209–10 (C.M.A.1986).

Recently, the Navy–Marine Corps Court of Criminal Appeals indicated that under Article 134, UCMJ, the language of the threat itself, as alleged in the specification, was critical. *See United States v. Bewsey*, 54 M.J. 893, 896 (N.M.Ct.Crim.App.2001). The *Bewsey* Court stated:

In *United States v. Fishwick*, 25 C.M.R. 897, 1958 WL 3276 (A.F.B.R.1958) the accused was charged with threatening to injure a lieutenant by pointing a pistol at him and saying, "Turn that music off and keep it off, do you understand, do you understand." *Fishwick*, 25 C.M.R. at 899. On appeal, Fishwick argued that the specification failed to allege an offense, and the Air Force Board of Review agreed. The Board noted that one essential element of a threat is that "within its language the accused declared his purpose or intent to do an act which was wrongful." *Id.* (quoting *United States v. Davis*, 6 U.S.C.M.A. 34, 19 C.M.R. 160, 1955 WL 3415 (1955)). In *Fishwick*, the Board of Review found that the language cited above failed to state an offense because "[t]here [was] no oral or written declaration of the intent to injure." *Fishwick*, 25 C.M.R. at 899.

*Id.; see also United States v. Shropshire*, 20 U.S.C.M.A. 374, 376, 43 C.M.R. 214, 216, 1971 WL 12761 (1971); *United States v. Dallman*, 34 M.J. 274, 275 (C.M.A.1992) (holding that a dereliction of duty specification failed to state an offense because it lacked an allegation that appellant "'had certain duties'" (citation omitted)). *But see United States v. Craft*, 44 C.M.R. 664, 666, 1971 WL 12595 (A.C.M.R.1971) (holding that a specification alleging obstruction of justice by communicating a threat to injure the person that the accused is attempting to influence need not contain the specific threatening language).

In appellant's case, the government asserts[3] that the absence of the words and

---

**3.** The government also argues that a fact finder may go beyond the content of the specification and consider the surrounding circumstances of the threat to determine the essential element "that a reasonable person in the recipient's place would perceive the contested statement by appellant to be a threat" to injure presently or in the future. *United States v. Phillips*, 42 M.J. 127,

129–30 (1995) (citing *United States v. Gilluly*, 13 U.S.C.M.A. 458, 461, 32 C.M.R. 458, 461, 1963 WL 4582 (1963)) (other citations omitted); *United States v. Cotton*, 40 M.J. 93, 95 (C.M.A.1994); *United States v. Wartsbaugh*, 21 U.S.C.M.A. 535, 537–38, 45 C.M.R. 309, 311–12, 1972 WL 14183 (1972); *cf. United States v. Najera*, 52 M.J. 247, 249 (2000) ("all the circumstances of a case can

symbols, "to wit: ____," from the model specification in the MCM, 1998, for communication of a threat indicates that there is no requirement for recitation of the threat itself.[4] The sample specification in the MCM, 1998, for communication of a threat states:

> In that ____ (personal jurisdiction data), did, (at/on board—location) (subject matter jurisdiction data, if required), on or about ____ 19__, wrongfully communicate to ____ a threat [to] (injure ____ by ____) (accuse ____ of having committed the offense of ____) (____).

MCM, 1998, Part IV, para. 110f. The government's contention is without merit because the word "to" was inadvertently left out of the 1995 and subsequent versions of the MCM.[5] As such, the absence of the word "to" from the model communication-of-a-threat specification does not carry the significance urged by the government. Additionally, the content of the MCM's model specifications does not conclusively establish whether or not a specification states an offense because "[t]he sample specifications provided in subparagraph f of each paragraph ... are guides. The specifications may be varied in form and content as necessary." MCM, 1998, Part IV discussion.

Applying the three-prong *Dear* test to Specifications 2–4 of Charge III, we find that these three specifications fail to state offenses and cannot be sustained upon review.

These specifications do not expressly or impliedly allege essential words of criminality,[6] to wit: "certain language expressing a present determination or intent to wrongfully injure the person, property, or reputation of another person, presently or in the future,"[7] and they fail to protect against double jeopardy.[8] We will dismiss these specifications without prejudice in our decretal paragraph.

### Pre-Sentence Proceeding Ineffective Assistance of Counsel

Appellate defense counsel contend in their written submissions, or have asserted during oral argument, that appellant received ineffective assistance of counsel during the sentencing phase of his trial because his defense team failed to: (1) object to trial counsel's leading questions; (2) cross-examine the government's aggravation witnesses; (3) research and properly object to the admissibility of appellant's pre-service Florida *nolo contendere* pleas with adjudication of guilt withheld; (4) investigate and present available mitigation evidence; (5) provide additional assistance to appellant to help him better prepare his unsworn statement; (6) object to improper prosecution argument; and (7) obtain appellant's consent before urging the members to sentence him to twenty-one years confinement.

To establish ineffective assistance of counsel, an appellant must meet a two-

---

be considered [to determine] whether disrespectful behavior, in violation of Article 89[, UCMJ, 10 USC § 889,] has occurred" (citations omitted)). We are not persuaded by the government's argument because appellant's case is distinguishable from the cited cases. We found no cases where the type of information absent from appellant's communication-of-a-threat specifications was imported after arraignment into the specification.

4. *Compare* MCM, 1998, Part IV, para. 110f (Threat, communicating) *with* para. 12f (Contempt toward officials), para. 57f (Perjury), para. 89f (Indecent language), *and* para. 109f (Threat or hoax: bomb).

5. The word, "to," was included in the form specification for communication of a threat in the 1951, 1969, and 1984 *editions of the MCM, but* was not included in the 1995, 1998, and 2000 editions of the MCM. *Compare* MCM, 1951, app. 6c, para. 171, at p. 494; MCM, 1969 (Rev. ed.), app. 6c, para. 181, at A6–26; *and* MCM, 1984,

Part IV, para. 110f *with* MCM (1995, 1998, and 2000 ed.), Part IV, para. 110f. Executive Orders 12550, 19 Feb. 1986; 12586, 3 Mar. 1987; 12708, 23 Mar. 1990; 12767, 27 June 1991; 12888, 23 Dec. 1993; 12936, 10 Nov. 1994; 12960, 12 May 1995; 13086, 27 May 1998; and 13140, 6 Oct. 1999 do not contain any change to the form specification for communication of a threat. *See* MCM, 2000, app. 25, at A25–2 to A25–53. We also note that the first element for communicating a threat in paragraph 3–110–1c(1) of Dep't of Army, Pam. 27–9, Legal Services: Military Judges' Benchbook (1 Apr. 2001) reads: "That (*state the time and place alleged*), the accused communicated certain language, to wit: (*state the language alleged*), or words to that effect."

6. *French*, 31 M.J. at 60.

7. MCM, 1998, Part IV, para. 110b(1).

8. *Dear*, 40 M.J. at 197.

pronged test to overcome the strong presumption of competence:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.[9]

The *Strickland* two-part test for ineffective assistance of counsel applies to sentencing hearings.[10] "A defendant who claims ineffective assistance of counsel 'must surmount a very high hurdle.'" *Alves*, 53 M.J. at 289 (citations omitted). "Judicial scrutiny of such a claim is highly deferential and should not be colored by the distorting effects of hindsight." *Id.* The burden is on an accused to show "specific errors ... [which] were unreasonable 'under prevailing professional norms.'" *United States v. Brownfield*, 52 M.J. 40, 42 (1999) (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052).

### The Government's Aggravation Evidence Admissibility of Pre–Service Florida *Nolo Contendere* Pleas

■ During the sentencing phase of appellant's court-martial, the trial counsel offered into evidence, as prior convictions, records of two pre-service pleas of *nolo contendere*, which stated on the face of the documents admitted into evidence, "adjudication of guilt was withheld, a finding of guilt entered." On 10 May 1993, appellant entered a *nolo contendere* plea for first-degree misdemeanor violations of Florida Statutes for trespass and battery, to wit: Fla. Stat. ch. 810.08(2)(b) and ch. 784.03 (1992). His sentence included a fine, six months' probation, and an order to have no "hostile contact [with the] victim." On 22 October 1993, appellant entered a *nolo contendere* plea for the third-degree felony of attempted possession of cocaine, in violation of Fla. Stat. ch. 777.04 and ch. 893.13(1)(f) (1992). His sentence included a fine and two years' probation. There is no evidence that appellant's probation was vacated for either of these sentences.

Although acknowledging that the *nolo contendere* pleas were, indeed, convictions, appellant's trial defense counsel objected to their admissibility, citing Military Rule of Evidence [hereinafter Mil.R.Evid.] 403. Trial defense counsel asserted that the "remoteness and the nature of the convictions indicate that the probative value of the convictions will be substantially outweighed by the danger of unfair prejudice" because the convictions were approximately five years old, and "occurred prior to PFC Saintaude's enlistment in the military." Applying the balancing test in Mil.R.Evid. 403, the military judge overruled the defense objection and admitted the *nolo contendere* pleas into evidence as prior civilian "convictions."[11]

To resolve appellant's allegations of ineffective assistance of counsel, we ordered affidavits from appellant's military counsel, Captains (CPT) B and C.[12,13] During appellant's sentencing hearing, CPT C took the lead on behalf of the defense team.[14] Captain B was

---

9. *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)); *United States v. Holt*, 33 M.J. 400, 409 (C.M.A.1991) (citations omitted); *see also United States v. Grigoruk*, 56 M.J. 304, 307 (2002) (Gierke, J.) (restating the two *Strickland* prongs and adding a third prong stating, "[a]re appellant's allegations true; if so, 'is there a reasonable explanation for counsel's actions?'" (citation omitted)).

10. *United States v. Alves*, 53 M.J. 286, 289 (2000) (citing *United States v. Ginn*, 47 M.J. 236, 246–47 (1997) and *United States v. Boone*, 49 M.J. 187 (1998)) (other citations omitted); *see also Glover v. United States*, 531 U.S. 198, 201–04, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001).

11. *See also* R.C.M. 1001(b)(3)(A).

12. Appellant's civilian defense counsel, Mr. D, died after trial.

13. We may order and consider post-trial affidavits to assist with resolution of allegations of ineffective assistance of counsel. *See United States v. Lewis*, 42 M.J. 1, 6 (1995) (citations omitted).

14. In her post-trial affidavit, CPT B stated that Mr. D was responsible for the sentencing phase

responsible for the motion to suppress appellant's *nolo contendere* pleas; however, she did not remember researching whether appellant's *nolo contendere* pleas constituted convictions under Florida law. Captain C doubted that this issue was researched. Both military defense counsel acknowledged in affidavits that they failed to recognize that these adjudications might not be "convictions." [15] There is nothing in the record indicating that trial counsel was aware of this issue either.

Rule for Courts–Martial 1001(b)(3) authorizes the introduction of civilian convictions during sentencing. Admissibility of prior convictions is subject to Mil.R.Evid. 403, which states that relevant evidence may be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice." *See United States v. Clemente*, 50 M.J. 36, 37 (1999) (citation omitted). Wheth-

er a prior civilian adjudication of an offense under a *nol pros* arrangement, a *nolo contendere* plea, or involving a juvenile, deferred, or withheld adjudication, or some other expungement scheme constitutes a prior "civilian conviction" during the sentencing phase of a court-martial under the applicable R.C.M. 1001(b)(3) [16] can be a difficult question to answer. This is because at the time of appellant's trial the state law of the jurisdiction in which the adjudication occurred determined whether appellant's civilian adjudication was a conviction, and state law may be unsettled and can frequently change.[17] "The laws of the various states do not always label proceedings in a manner that readily identifies the result as a 'conviction' for purposes of R.C.M. 1001(b)(3)." *United States v. White*, 47 M.J. 139, 140 (1997).[18]

It is unclear, and thus not plain error,[19] whether a Florida plea of *nolo contendere*

---

of appellant's trial. However, CPT C "became primary attorney for the sentencing case on very short notice" after findings were announced. Regardless of the assignment of duties and responsibilities within the defense team, "we evaluate the performance of the defense team as a unit for each of appellant's claims" of ineffective assistance of counsel. *United States v. McConnell*, 55 M.J. 479, 481 (2001).

**15.** Captain C's post-trial affidavit indicated that it did not occur to him "that a finding of guilt based [on] a *nolo contendere* plea would not count as a conviction." Under Florida law an unadjudicated, finding of guilt based upon a *nolo contendere* plea is not equivalent to a conviction under most circumstances, in contrast to a guilty plea with adjudication withheld or a *nolo contendere* plea with an adjudication of guilt, which are considered to be convictions for substantially more purposes. *Compare United States v. Drayton*, 113 F.3d 1191, 1193 (11th Cir.1997) (per curiam) (holding that a Florida *nolo contendere* plea with an adjudication of guilt constitutes a conviction); *United States v. Grinkiewicz*, 873 F.2d 253, 255 (11th Cir.1989) and *United States v. Cook*, 10 M.J. 138, 139 (C.M.A.1981) (both holding that a Florida guilty plea with adjudication of guilt withheld constitutes a conviction); *and McCrae v. State*, 395 So.2d 1145, 1153–54 (Fla.1980) (holding that for capital sentencing purposes, a plea of guilty without an adjudication of guilt may be used as a "conviction") *with Negron v. State*, 799 So.2d 1126, 1127 (Fla.Dist. Ct.App.2001) *and St. Lawrence v. State*, 785 So.2d 728, 730 (Fla.Dist.Ct.App.2001).

**16.** On April 11, 2002, the President amended R.C.M. 1001(b)(3)(A) and ended the requirement that admissibility of convictions during sentenc-

ing be dependent on the law of the jurisdiction where the adjudication originated, permitting trial counsel to introduce *nolo contendere* pleas such as appellant's as civilian convictions during sentencing, provided arraignment has been completed on or, after May 15, 2002. 2002 Amendments to the MCM.

**17.** *See* MCM, 1998, app. 21, R.C.M. 1001(b)(3) analysis, at A21–67–68 ("Whether the adjudication of guilt in a civilian forum is a conviction will depend on the law in that jurisdiction.").

**18.** For example, in *United States v. Hughes*, 26 M.J. 119, 120 (C.M.A.1988), our superior court found that under Texas law an "Order Deferring Adjudication" was not a "conviction" and inadmissible under R.C.M. 1001(b)(3)(A), even though it was admissible for sentencing purposes in certain Texas trials. In *United States v. Slovacek*, 24 M.J. 140 (C.M.A.1987), our superior court "held that juvenile records do not amount to an admissible conviction; but to do so, [they] relied upon the distinction in Mil.R.Evid. 609(d), Manual, *supra*, 'between a conviction and a juvenile adjudication,' precisely because RCM 1001(b)(3)(A) was not conclusive." *White*, 47 M.J. at 140.

**19.** We agree with the analysis of the Eleventh Circuit, in *United States v. Chubbuck*, 252 F.3d 1300, 1306 (11th Cir.2001), that it was not plain error for the court to consider Chubbuck's plea of guilty with adjudication withheld as a predicate conviction under 18 U.S.C. § 921(a)(20) because of the lack of definitive authority on whether "a guilty plea with adjudication withheld constitutes a conviction under Florida law." In *Chubbuck*, the court also noted:

with adjudication of guilt withheld, but a finding of guilt entered, constitutes a conviction for purposes of R.C.M. 1001(b)(3)(A). "[T]he term 'conviction' as used in Florida law has been a 'chameleon-like' term that has drawn its meaning from the particular statutory context in which the term is used."[20]

We find Eleventh Circuit analysis to be persuasive, which has held that a *nolo contendere* plea without an adjudication of guilt, and with successful completion of probation, is not a predicate conviction under the Federal Firearms statute.[21,22] In reaching this determination, the district court in *Thompson* applied Florida case law from the Florida statute most analogous to the Federal Firearms statute, that is Fla. Stat. ch. 790.23 (1989), a statute that prohibits possession of a firearm by felons. *Thompson*, 756 F.Supp. at 1493. However, the *Thompson* court noted that ch. 790.23 "offers little help because it provides no definition for the terms 'convicted' or 'conviction'." *Id.*

We look to the Florida Statute most analogous to R.C.M. 1001(b)(3) to provide the

> There appears to be a common perception among persons involved in the Florida criminal justice system that a defendant, for whom adjudication is withheld, has not been "convicted" under Florida law. Probation officers of this court, having served as Florida probation officers before joining the federal system, have confirmed that defendants in Florida are routinely advised by practicing criminal defense lawyers, by state probation officers, by state prosecutors, and by judges, that when adjudication is withheld, they are not "convicted" and accordingly do not lose their civil rights.
>
> *Id.* at 1305 (quoting *Thompson*, 756 F.Supp. at 1496) (other citation omitted). Similarly, we conclude that admission of appellant's pre-service *nolo contendere* pleas was error, but not plain error. Their admission was not a "clear or obvious" error under applicable Florida law at the time of appellant's trial. *See United States v. Ruiz*, 54 M.J. 138, 143 (2000); *United States v. Southwick*, 53 M.J. 412, 414 (2000); *United States v. Powell*, 49 M.J. 460, 465 (1998).

20. *Raulerson v. State*, 763 So.2d 285, 291 (Fla. 2000) (per curiam) (citation omitted); *State v. Keirn*, 720 So.2d 1085, 1088 (Fla.Dist.Ct.App. 1998) ("the term 'conviction' requires a close examination of its statutory context and legislative history and development").

21. The Federal Firearms Statute, 18 U.S.C. § 922(g)(1) (2002), prohibits any person "who has been convicted in any court of, a crime

most relevant definition of "conviction" applicable to appellant's case. Florida Rule of Criminal Procedure [hereinafter Fla. R.Crim. P.] § 3.702(d)(2) (2001) defines "conviction" as "a determination of guilt resulting from plea or trial, regardless of whether adjudication was withheld or whether imposition of sentence was suspended." "Because a plea of no contest with an adjudication of guilt withheld and with probation successfully completed does not entail a 'determination of guilt,' such offenses should not be included as a 'prior record' under the sentencing guidelines." *Negron*, 799 So.2d at 1127; *Lawrence*, 785 So.2d at 730 (both citing *Garron v. State*, 528 So.2d 353 (Fla.1988)). We conclude that appellant's *nolo contendere* pleas with adjudication of guilt withheld are inadmissible under R.C.M. 1001(b)(3) because they would be inadmissible during sentencing if appellant was convicted in Florida of rape and robbery. *See* Fla. Stat. ch. 921.0011(2) (2001); Fla. R.Crim. P. 3.701(d)(2) (2001).[23]

We find that appellant's trial defense team provided ineffective assistance of counsel by

punishable by imprisonment for a term exceeding one year ... to ... possess ... any firearm or ammunition ...." "What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." 18 U.S.C. § 921(a)(20)(B) (2002).

22. *United States v. Willis*, 106 F.3d 966, 968–70 (11th Cir.1997); *United States v. Thompson*, 756 F.Supp. 1492, 1497 (N.D.Fla.1991); *see also Garron v. State*, 528 So.2d 353, 360 (Fla.1988) (holding that a *nolo contendere* plea with adjudication withheld is not a "conviction" for capital sentencing proceedings); *State v. McFadden*, 772 So.2d 1209, 1216 (Fla.2000) (holding that "[u]nless there is a final judgment of conviction or an adjudication of guilt, the defendant or witness may not be impeached with evidence of a guilty plea or jury verdict" under Fla. Stat. ch. 90.610(1)(1997)).

23. We choose not to apply the definition of "conviction" in Fla. Stat. ch. 775.13(1) (2001), which states that "convicted" means, as to registration of convicted felons, "a determination of guilt which is the result of ... a plea of guilty or *nolo contendere*, regardless of whether adjudication is withheld" because this use of a *nolo contendere* plea is dissimilar to its use in a sentencing proceeding. *See also Keirn*, 720 So.2d at 1085–91 (discussing in detail the "statutory context" for the term "conviction" without adjudication as it pertains to driving with a suspended license).

failing to research whether appellant's *nolo contendere* pleas constituted convictions under Florida law. This error was aggravated by the trial defense counsel's concession to the military judge that the *nolo contendere* pleas constituted convictions.

## Aggravation Witnesses

■ Appellate defense counsel contend that appellant received ineffective assistance of counsel because trial defense counsel failed to object to the trial counsel's leading questions and failed to cross-examine the government's aggravation witnesses. None of the government's three aggravation witnesses, PFC Fleming, Ms. N, and Ms. P, were cross-examined by appellant's defense counsel. Defense counsel lodged only a single objection, asserting a lack of relevance, to one of the trial counsel's questions.

Private First Class Fleming testified that appellant's threat frightened him and his fiancée, who moved from Colorado to Arizona out of concern over appellant's threat. Confinement officials moved PFC Fleming to civilian confinement separate from appellant so that he would be safe. Ms. N, an employee of one of the two 7–Elevens robbed by appellant, testified that she was terrified because appellant said to her, "I'm going to kill that bitch," seven times over the course of the robbery. Ms. N thought appellant had a gun during the robbery because he had his hand in his coat. Thoughts of the robbery continually intruded into Ms. N's life. She moved her family because she no longer wanted to live near the scene of the robbery.

Ms. P, the victim of the rape, testified that while appellant was raping her, she was thinking about herself and her baby. After the rape Ms. P was afraid to be alone and she lacked trust in others. Her post-rape medical examination was embarrassing and painful. Ms. P had difficulty describing the

rape for the doctors, police, and attorneys in pretrial interviews and in court. The rape had a negative impact on her marriage. The rape caused Ms. P to suffer weight-loss and to be unable to sleep. She was also unable to nurse her baby because the stress of the rape caused her to lose her milk.

Appellate defense counsel argue that trial defense counsel failed to object to leading questions, and that appellant was prejudiced by his counsel's failure to cross-examine Ms. P about her claims of embarrassment, weight-loss, and failed marriage as a result of the rape. Appellate defense counsel also assert that appellant's trial defense counsel failed to use a videotaped interview of Ms. P made five days after the rape for impeachment. On the videotape, Ms. P seems comfortable talking about the rape [24] and was already quite thin.[25] Finally, appellate defense counsel refer to Ms. P's medical records, which indicated that even before the rape she was taking medication to induce breast milk.

Most of the information that appellate defense counsel contend would have impeached Ms. P's testimony was already presented to the members during the merits phase of the trial. A clinical social worker, who provided counseling for Ms. P after the rape, testified that, at first, Ms. P said that her sexual relationship with her husband was only affected for two weeks after the rape, but later she indicated differently. Neither Ms. P nor her husband testified about why they were getting divorced, but at appellant's trial they were engaged in a nasty custody battle. The clinical social worker said that Ms. P, who was seventeen years old at the time of the rape, suffered from post-traumatic stress disorder, and experienced nightmares, significant weight loss,[26] and an inability to nurse

24. Ms. P's positive demeanor five days after the rape, as depicted on the videotaped interview, was cumulative with other information presented to the members on the merits. Ms. P and her husband testified that she showed a positive demeanor the evening after the rape. The clinical social worker explained to the members that it was not unusual for a person to seem happy after a traumatic event.

25. There is also a possibility that Ms. P's physical appearance was affected by her car accident, which occurred several months before she testified at appellant's trial.

26. The clinical social worker's notes state that Ms. P lost 10 pounds due to stress after the rape and that she weighed 94 pounds three months after the rape. Ms. P's weight prior to the rape and at trial is not part of the record. The de-

her baby after the rape.[27] The Sexual Assault Nurse Examiner who examined Ms. P at the hospital the day after the rape testified that she conducted a pelvic examination, swabbed Ms. P's vagina and cervix for evidentiary purposes, and observed vaginal trauma and bleeding from rough sexual intercourse.

Under these circumstances, additional aggressive cross-examination and impeachment of Ms. P during the sentencing phase, after her lengthy cross-examination on the merits, would not have substantially benefited appellant. The trial defense counsel may also have reasonably decided as a tactical matter that such cross-examination would be counter-productive. *See United States v. Ingham*, 42 M.J. 218, 228 (1995) (recognizing that a valid tactical reason for limited cross-examination is "[w]ider cross-examination of [the witness] may have merely solidified the position of the [g]overnment"). Appellate defense counsel failed to establish that trial defense counsel's performance during the government's presentation of aggravation evidence was deficient, nor has appellate defense counsel established that trial defense counsel's errors prejudiced the defense to the extent that they deprived appellant of his right to a fair trial. *See Williams*, 529 U.S. at 390, 120 S.Ct. 1495.

### The Defense's Extenuation and Mitigation Presentation

Appellate defense counsel allege two prejudicial errors by the defense team during the presentation of extenuation and mitigation evidence: (1) the defense team failed to provide additional assistance to appellant to help him prepare a better unsworn statement; and (2) the defense team failed to investigate and present available mitigation evidence.

As the sentencing hearing began, appellant and his mother had not come to terms with the findings of the court-martial,[28] and this inhibited the presentation of defense extenuation and mitigation evidence. The defense read to the court members a stipulation of expected testimony of appellant's mother:

> Jacques Saintaude is my youngest child. His father and I divorced when Jacques was 10 years old. I remarried when he was 13. I have not seen my son since the Army sent him to Fort Carson. We talked almost weekly. Jacques has two older sisters, Naomi and Jacqueline. Jacques' older half-brother was murdered when Jacques was in high school. Jacques has two children.[29] Jacquis, his son, is five years old. Jaleesa, his daughter, was born this past Father's day, June 21, 1998.

Appellant did not testify on the merits. The best opportunity the members had to directly assess appellant was during his unsworn statement, at which time he stated:

> I would like to thank the members of this court for viewing this case based on the evidence that was presented to you. However, I truly believe that—I truly believe there are [sic] a [G]od, and I truly believe that God is over everything. However, your decision was based on the evidence that we were allowed to present it [sic] to you. But I pray that God will bless each one of y'all, and I pray that the truth will come out to [sic] this matter. Thank you. That's all.

Appellate defense counsel argue that his trial defense counsel failed to adequately prepare appellant for his unsworn statement, but they do not to support this argument with any evidence. We have no description of what appellant would have said during his unsworn statement if he had been better

---

fense has failed to establish that Ms. P lied about stress from the rape causing her to lose weight.

**27.** Appellant has failed to provide conclusive evidence that the rape did not cause Ms. P to lose her ability to provide breast milk for her baby.

**28.** During the government's case in aggravation, appellant's mother entered the courtroom and began screaming and crying, "My son, my son. I want my son." The military judge recessed the trial for forty-four minutes. After the trial re-

sumed, the military judge warned the defense that appellant's mother would be escorted out of the trial if she made another outburst. The military judge also told appellant that he knew appellant was upset about the findings, and that he would consider shackling appellant or excluding him from the proceedings if he became disruptive.

**29.** Appellant's statement submitted under R.C.M. 1105 indicates he has three children.

prepared. Accordingly, appellate defense counsel have failed to meet their burden of establishing ineffective assistance of counsel with respect to preparing appellant for his unsworn statement.

■ The members received a copy of appellant's Personnel Qualification Record prior to sentencing deliberations, which indicated that appellant is a high school graduate, had a general technical score of 94, was twenty-four years' old when his sentence was announced, and had a military occupational specialty of medical supply specialist. Appellant was on active duty nineteen months prior to being placed into pretrial confinement, and was awarded the Army Service Ribbon and Army Achievement Medal (AAM). His military records lacked any additional description of his duties or performance evaluations.

After trial, appellant procured the assistance of a new civilian defense counsel, who submitted thirteen letters to the convening authority pursuant to R.C.M. 1105. These letters were from appellant, family, friends, clergy, and a noncommissioned officer, who was appellant's primary instructor and counselor during Advanced Individual Training (AIT). The letters state that before appellant joined the Army, he was a promising student who overcame the odds as an immigrant, provided meals for the homeless, and participated in a tutorial program. He was employed as a team leader at a steakhouse. A letter from a staff sergeant indicates that during AIT appellant was an exemplary soldier, who demonstrated an impressive degree of professionalism. In his letter, appellant said that he received his AAM for being the "best[,] hard[-]working soldier in my section" and for completing two hundred hours of correspondence courses. Appellant's wife, who was present at appellant's trial, wrote that she expected to and was ready, willing

and able to testify on appellant's behalf. The mothers of appellant's other children asked for mercy for appellant. The letters urge clemency and state that appellant was enthusiastic about his military service, shared a close bond with his mother, and was a good father to his children.

In response to our order that CPTs B and C describe the defense efforts to investigate appellant's pre-service background for mitigation evidence, CPT C said that he attempted to telephone appellant's mother on several occasions without success. Captain C also stated, "Neither the appellant nor Mr. D would acknowledge the possibility that the appellant would be convicted and therefore refused to cooperate with our efforts to prepare for sentencing."[30] Neither CPT B nor CPT C indicated that anyone on the defense team investigated appellant's background beyond the preparation of his mother's stipulation of expected testimony, and beyond discussion of the impact of various confinement options with appellant. Also, they did not interview any of the persons who provided the letters that were included in the R.C.M. 1105 submissions to the convening authority. Captains B and C did not assert any tactical reason or otherwise explain their lack of effort on appellant's behalf.[31]

Under the circumstances of this case, appellant's defense team erred during the sentencing phase by their failure to investigate appellant's background for potential mitigation evidence and, thereafter, by their failure to present available mitigation evidence. *See Alves*, 53 M.J. at 289 (" 'Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' ") (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986)). "It should not require an attorney of extreme competence or vast experience to realize that

---

**30.** The relationship between CPT C and Mr. D became so strained that in the midst of trial preparation, CPT C wrote his Regional Defense Counsel requesting that Mr. D be barred from court-martial practice for incompetence.

**31.** *See, e.g., United States v. Morgan*, 37 M.J. 407, 409–10 (C.M.A.1993) (holding that a failure to thoroughly investigate or to present potential insanity defense or evidence of appellant's person-

ality disorder in mitigation was tactical decision and not ineffective assistance of counsel); *United States v. Stephenson*, 33 M.J. 79, 82 (C.M.A.1991) (holding that a tactical concern about cross-examination of mitigation witnesses concerning derogatory information pertaining to appellant justified defense counsel's failure to present mitigation testimony during sentencing).

when representing [a soldier] who is facing life in prison ... some extra effort may be necessary to prepare a credible case in extenuation and mitigation." [32]

### Closing Arguments on Sentencing [33]

Appellate defense counsel assert that trial defense counsel's sentencing argument was improper. Appellant's trial defense counsel countered trial counsel's argument for confinement for life without eligibility for parole by stating that an appropriate sentence included twenty-one years of confinement. Trial defense counsel further urged the members not to split the difference between the government and the defense proposals. Appellant's trial defense counsel also argued that because appellant was only twenty-four years old and had a statistical life expectancy of forty-nine years, [34] it would be unfair to confine him for the next forty-nine years. The members adjudged forty-eight years of confinement.

In a post-trial affidavit, appellant states that he did not consent to his trial defense counsel's argument for twenty-one years' confinement. Appellant asserts that his military trial defense counsel attempted to convince him that he should concede in his unsworn statement that he should be confined for approximately ten years because statistics established that he would be less of a threat to society. Appellant refused to make such a statement. His military trial defense counsels' affidavits counter that appellant consented to the strategy of arguing for a term of years because it would permit earlier consideration for parole than the possible sentence of confinement for life or confinement for life without parole.

"Effective advocacy requires an astute, reflective evaluation of a set of circumstances with rational, tactical trial choices flowing therefrom." *United States v. Burt*, 56 M.J. 261, 265 (2002). We call upon defense counsel "to determine the odds of what might happen as to the findings or sentence and to structure their arguments based on these probabilities." *United States v. Bolkan*, 55 M.J. 425, 428 (2001) (citing *United States v. Fluellen*, 40 M.J. 96, 98 (C.M.A.1994)). We conclude from our superior court's decisions regarding defense counsel's argument for a punitive discharge, [35] that it would have been

---

**32.** *United States v. Dorsey*, 30 M.J. 1156, 1160–61 (A.C.M.R.1990) (holding that a failure to present meaningful pre-sentencing evidence in response to the government's damaging character evidence was ineffective assistance); *see also Boone*, 49 M.J. at 196 n. 10 (citations omitted); *Holt*, 33 M.J. at 411–12 (holding that a failure to call witnesses or the accused, to register objections, or to cross-examine government witnesses at sentencing was ineffective assistance); *United States v. Sadler*, 16 M.J. 982, 982–84 (A.C.M.R.1983) (holding that a failure to present any evidence in extenuation or mitigation or any statement from appellant, and failure to argue for an appropriate sentence was ineffective assistance); *cf. United States v. Harris*, 34 M.J. 297, 300–02 (C.M.A. 1992) (holding that a failure to obtain and introduce character evidence on the merits raised a "substantial question" of effectiveness of counsel and required a remand for reconsideration), *remanded to* 36 M.J. 936 (A.C.M.R.1993).

**33.** We disagree with and decline to discuss appellate defense counsel's contention that appellant's trial defense counsel were ineffective for failing to object to trial counsel's argument.

**34.** No evidence was presented to support the contention that appellant's life expectancy was forty-nine years.

**35.** Recently, in discussing whether it was appropriate for defense counsel to argue for a punitive

discharge in lieu of confinement, our superior court noted, "[t]o be an effective advocate, trial defense counsel is required to discuss with an accused the various components of a military sentence, i.e., confinement, discharge, reduction in rank, and forfeitures, and after such counseling and in accordance with his client's wishes, zealously represent his or her client." *Burt*, 56 M.J. at 264 (citing *United States v. Pineda*, 54 M.J. 298 (2001)); *cf. New York v. Hill*, 528 U.S. 110, 114–15, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000) (client bound by counsel's tactical decisions, except on the most fundamental of choices). "A realistic assessment of possible outcomes is good lawyering. However, a fundamental representational choice, such as a decision whether to seek to stay in the service or passively accept a punitive discharge, is for the client to make." *Bolkan*, 55 M.J. at 429 (Baker, J., concurring); *see also United States v. Weatherford*, 19 U.S.C.M.A. 424, 425–26, 42 C.M.R. 26, 27–28, 1970 WL 6969 (1970). Counsel may not "'ask a court-martial to impose a punitive discharge when the accused's wishes are to the contrary.'" *Pineda*, 54 M.J. at 301 (quoting *United States v. Dresen*, 40 M.J. 462, 465 (C.M.A. 1994)). Indeed, it is error for defense counsel to concede the appropriateness of a punitive discharge without any indication on the record that appellant desired such an outcome. *Id.*

prudent for defense counsel and the military judge [36] to ensure that appellant concurred with his defense counsel's argument for twenty-one years of confinement,[37] given that twenty-one years is an unusually lengthy recommendation. Because we are returning appellant's case for a sentence rehearing, we need not decide whether appellant was prejudiced by the sentencing arguments of his trial defense counsel.

### Assessment of Prejudice and Conclusion

Having considered the totality of circumstances, we are convinced that appellant was prejudiced[38] during the sentencing phase of his trial by the improper admission of his pleas of *nolo contendere*[39] and by his defense counsel's failure to investigate and present an adequate mitigation case. "Normally, ineffective assistance of counsel at the sentencing phase [due to a failure to present an adequate mitigation case] is prejudicial and requires a new sentencing hearing because the record does not contain the evidence that an effective counsel would have presented." *Alves*, 53 M.J. at 290 (citing *Boone*, 49 M.J. at 198). We lack confidence that we have sufficient information to reassess the sentence without resorting to a rehearing. *Id.* We cannot reliably affirm "only so much of the sentence as 'would have been imposed at the original trial absent the error[s].'" *United States v. Eversole*, 53 M.J. 132, 133 (2000) (quoting *United States v. Taylor*, 47 M.J. 322, 325 (1997)).

We find the remaining assignments of error to be without merit. We also find that the matters personally raised by the appellant pursuant to *Grostefon*, 12 M.J. at 436–37, to be meritless.

The findings of guilty of Specifications 2, 3, and 4 of Charge III are set aside and Specifications 2, 3, and 4 of Charge III are dismissed without prejudice. The remaining findings of guilty are affirmed. The sentence is set aside. The same or a different convening authority may order a rehearing on the sentence.

Senior Judge CANNER and Judge CARTER concur.

---

**36.** No statute, rule, or military case requires a statement from an accused on the record that he concurs with defense counsel's argument for a specific period of confinement, and we do not require one in this decision.

**37.** *See also* Army Reg. 27–26, Legal Services: Rules of Professional Conduct for Lawyers Rule 1.2(a) (1 May 1992), which provides:

A lawyer shall abide by a client's decisions concerning the objectives of representation . . . and shall consult with the client as to the means by which these decisions are to be pursued. . . . In a criminal case, . . . the lawyer shall abide by the client's decision, after consultation with the lawyer, as to the choice of counsel as provided by law, a plea to be entered, selection of trial forum, whether to enter into a pretrial agreement, and whether the client will testify.

*See also Jones v. Barnes*, 463 U.S. 745, 753, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) (quoting Model Rules of Professional Conduct, Proposed Rule 1.2(a) (Final Draft 1982)). "With the exception of these specified fundamental decisions, an attorney's duty is to take professional responsibility for the conduct of the case, after consulting with his client." *Id.*

**38.** Appellant was prejudiced to a much lesser degree by his conviction of the three communication-of-a-threat specifications. *See United States v. Murray*, 43 M.J. 507, 517 (A.F.Ct.Crim.App. 1995) (discussing prejudicial impact of appellate dismissal of a communication-of-a-threat specification).

**39.** We note that trial counsel argued on sentencing, "This is not the first time the accused has committed crimes. He was previously convicted of trespass, cocaine possession, and battery before he even got into the military." The military judge included the two prior "convictions" in his summary of the aggravating evidence during sentencing instructions.