# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, TELLITOCCI, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant WESLEY V. EATON**
**United States Army, Appellant**

ARMY 20130298

Headquarters, Eighth Army
Wendy P. Daknis, Military Judge
Lieutenant Colonel Kurt Takushi, Staff Judge Advocate

For Appellant: Colonel Kevin Boyle, JA; Major Amy E. Nieman, JA; Captain Payum Doroodian, JA (on brief); Lieutenant Colonel Jonathan F. Potter, JA; Captain Payum Doroodian, JA (on reply brief).

For Appellee: Colonel John C. Carrell, JA; Major John Choike, JA; Captain Timothy C. Erickson, JA (on brief).

13 May 2015

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent*

TELLITOCCI, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of one specification of willfully disobeying a superior commissioned officer, aggravated sexual assault, two specifications of aggravated sexual abuse of a child, sexual abuse of a child, and one specification of sodomy with a child, in violation of Articles 90, 120, 120b, and 125, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 890, 920, 920b, and 925 (2006 & Supp. IV, Supp. V; 2012). The convening authority approved the adjudged sentence of a dishonorable discharge, eighteen years of confinement, and reduction to E-1.

This case is before this court for review pursuant to Article 66, UCMJ. Appellant assigns four errors asserting, among other things, that his defense counsel were ineffective during the presentencing portions of his court-martial by failing to

investigate, prepare, and present extenuation and mitigation evidence. Appellant further alleges that two of the specifications of which he was convicted are multiplicious. These two assignments of error warrant discussion and relief.[1]

## BACKGROUND

Charges were preferred against appellant in September 2012. Appellant was arraigned in November 2012, there was a pretrial motion session on 11 March 2013, and trial was set for 1 April 2013. Appellant was represented by detailed military counsel, Captain (CPT) JG and CPT JB. The parties anticipated a fully contested case before a panel including enlisted members. As part of the preparation for trial, CPT JG traveled from Korea to New York to interview the victim, her mother (appellant's wife), and other family members. It is uncertain from the record as to the timing of this travel, but it is clear that counsel did not use any of this travel to interview potential mitigation witnesses. At some point prior to trial, appellant personally furnished two names to his counsel for use as presentencing witnesses—his mother (Mrs. TC), and Chief Warrant Officer Three (CW3) TM.

On the day before the trial was scheduled to start, after extensive discussions with CPT JG and CPT JB, appellant decided to plead guilty. As a result of this change, the defense consulted with the government's expert, a forensic psychologist, regarding appellant's potential for rehabilitation and likelihood of recidivism. Appellant did, in fact, plead guilty and did so without a pretrial agreement.

During presentencing, the government presented testimony from the victim and from their expert forensic psychologist regarding appellant's need for treatment. The psychologist testified that the disciplinary barracks (DB) had a suitable program and, if incarcerated at the DB, appellant could apply for the two-year long program four years before he started it. Captain JG cross-examined this witness and was able to develop testimony that, if the appellant accepted responsibility for his actions and elected to go into treatment, there was a high likelihood appellant would not re-offend. In response to additional questions by the defense, the expert also testified that if appellant chose not to participate in therapy he probably would not "do well" and, therefore, "treatment is the most important thing that we can do from here on out."

The defense called no witnesses during presentencing, but appellant made a very brief unsworn statement and the defense then admitted appellant's "good soldier book" which reflected his service in Bahrain and which included assorted evaluations, awards, a prior honorable discharge, and multiple training records and certificates. No written statements were submitted.

---

[1] Appellant also personally raises two issues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), neither of which merits discussion or relief.

Appellant now complains in a post-trial affidavit that his trial defense counsel failed to present an adequate sentencing case by failing to conduct a proper investigation and that the two witnesses he specifically requested were not called during his court-martial. Appellant further avers he never told his defense counsel that he agreed that no witnesses should be called. Additional affidavits were submitted from Mrs. TC and CW3 TM.

In her affidavit, Mrs. TC states that approximately two weeks before the trial date, she was contacted by CPT JG and informed that she was to be a telephonic witness during the trial, but was not interviewed about rehabilitative potential or asked about other possible witnesses who could testify on behalf of appellant. She further states that she was willing to participate and was informed by CPT JG that she would be notified of the time for the phone call so she could be prepared. She also states she was not contacted again by defense counsel and only found out after the trial ended that she was not to be called. Mrs. TC further states that she could have identified other character witnesses willing to testify on appellant's behalf.

The other proposed witness, CW3 TM, when contacted by CPT JG and asked about his availability for trial, informed CPT JG that since he was in school he would be unable to attend the trial in person. He also avers that he was not informed about the possibility of telephonic testimony and that he was not asked about any other potential witnesses but now states he could have indentified other character witnesses willing to testify on appellant's behalf.

Pursuant to an order from this court, the trial defense counsel each submitted affidavits responding to appellant's claims of ineffectiveness. The affidavit by now Major (MAJ) JG is the most relevant as he was lead counsel and was responsible for the presentencing case. This affidavit is in some part directly contradictory to appellant's, but for the most part it is an attempt to explain the defense approach to presentencing. In it, MAJ JG states that the team decided not to call any witnesses in person or by phone in order to avoid the potential for cross-examination regarding the charged misconduct. He also discussed the defense's desire to avoid potential for cross-examination regarding "certain uncharged misconduct," and although there are no specifics of any kind associated with this claim, there is no allegation that the government was in any way aware of this alleged misconduct.

Appellant pleaded guilty at trial to, inter alia, one specification of sexual assault of a child by penetrating her mouth with his penis on or about 28 June 2012 (Charge III, Specification 1) and one specification of sodomy with a child on divers occasions between on or about 1 January 2012 and on or about 28 June 2012 (Charge IV, Specification 2). During the providence inquiry, the military judge determined the act that took place on or about 28 June 2012 was the exact same act charged in both specifications. The military judge determined the two specifications would be treated as an unreasonable multiplication of charges for sentencing purposes. As a result of his pleas, appellant faced a maximum punishment of a dishonorable

3

discharge, 120 years of confinement, total forfeiture of all pay and allowances, and reduction to the grade of E-1.

A different defense counsel was detailed to assist in the preparation of appellant's submissions pursuant to Rule for Courts-Martial [hereinafter] 1105. This submission contained written letters of support from five individuals.

## DISCUSSION

*Ineffective Assistance of Counsel*

To establish ineffective assistance of counsel, appellant "bears the heavy burden of meeting both prongs of a two-part test: that the performance of his counsel was deficient and that he was prejudiced thereby." *United States v. Weathersby*, 48 M.J. 668, 670 (Army Ct. Crim. App. 1998) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)); *see also United States v. Scott*, 24 M.J. 186, 188 (C.M.A. 1987). Regarding the first prong, counsel is presumed competent; thus, appellant "must rebut the presumption by pointing out specific errors made by his defense counsel which were unreasonable under prevailing professional norms." *Weathersby*, 48 M.J. at 670 (citing *United States v. Cronic*, 466 U.S. 648 (1984)).

"[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. at 690-691.

To establish prejudice and meet the second prong, appellant must show "counsel's errors were so serious as to deprive the accused of a fair trial, a trial whose result is reliable." *Weathersby*, 48 M.J. at 670 (citing *Strickland*, 466 U.S. at 687). This requires appellant to show that the errors had more than "some conceivable effect" on the proceedings, but appellant "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693.

The post-trial affidavits submitted in this case conflict as to whether or not appellant agreed with the sentencing strategy adopted by his defense counsel. Due to this conflict, we are unable to make a factual determination about whether or not appellant concurred in this approach. *United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997). In any case, the necessity of appellant's concurrence in the sentencing strategy of his counsel is not dispositive of this case; what is controlling, however, is the soundness of counsels' strategy.

It may seem, at first blush, that the trial defense counsel were in a difficult situation not of their own creation; after all, appellant decided to plead guilty at the

4

last minute. However, it is clear from the affidavits of both defense counsel, and not contested by appellant, that long before the trial date, both counsel clearly anticipated that appellant would be convicted. As a result, there were long periods between the September 2012 preferral of charges, the November 2012 arraignment, and the April 2013 trial date which could have, at least in part, been used by trial defense counsel to prepare a sentencing case. They did not do so. In fact, defense counsel waited until two weeks before trial to initiate contact with appellant's sentencing witnesses.

Everyone also agrees that appellant provided his defense counsel a list of two potential witnesses and that neither of these witnesses were prepared by counsel to testify nor were they asked if they could identify any other potential witnesses.

Major JG's plan not to call any witnesses so as to avoid cross-examination about the charged misconduct is not contradicted or even mentioned in appellant's affidavit. Counsel's avowed strategy was not to have any witnesses available so that they would not be subject to cross examination about the conduct to which appellant had just admitted guilt. This approach in a judge-alone presentencing proceeding before the same military judge who just conducted a providence inquiry is nonsensical. This "strategy" in a presentencing case is unreasonable and if adopted by the defense bar, would preclude any presentencing witnesses being called in any case. It is also almost certain that this type of cross-examination of appellant's mother would not have been effective.

Prevailing professional norms and our adversarial system demand that defense counsel thoroughly investigate possible evidence in extenuation and mitigation to assist the sentencing authority in fashioning an appropriate sentence. *United States v. Sadler*, 16 M.J. 982, 983 (A.C.M.R. 1983). Moreover, matters in extenuation and mitigation are not only helpful to the sentencing authority, but also to the convening authority in making a clemency determination, and for this court exercising our obligations under Article 66, UCMJ. *Weathersby*, 48 M.J. at 673.

Major JG's claim that avoidance of "have you heard" or "did you know" cross-examination questions regarding "certain uncharged misconduct" is merely speculative in nature, especially absent any indication that such alleged misconduct by appellant was in any way known to the government. Without more, this is unhelpful. If this was truly the situation, written statements from supportive witnesses could have been developed. There were none submitted.

According to MAJ JG's affidavit, the defense plan relied upon the testimony of the government expert as their "primary source of sentencing evidence." This expert had minimal contact with appellant but did speak with appellant and defense counsel immediately before the trial. This heavy reliance on a last minute interview with the *government's* expert is evidence not of a well developed plan, but rather of an unprepared trial defense team.

Under the circumstances of this case, appellant's defense team erred during the presentencing phase by their failure to investigate appellant's background for potential mitigation evidence and, thereafter, by their failure to present available mitigation evidence. *See United States v. Alves*, 53 M.J. 286, 289 (C.A.A.F. 2000); *see also Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986); *Strickland*, 466 U.S. at 691 ("Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."). "It should not require an attorney of extreme competence or vast experience to realize that when representing [a soldier] who is facing [120 years] in prison . . . some extra effort may be necessary to prepare a credible case in extenuation and mitigation." *United States v. Dorsey*, 30 M.J. 1156, 1160 (A.C.M.R. 1990); *see also United States v. Saintaude*, 56 M.J. 888 (Army Ct. Crim. App. 2008).

In sum, under the facts and circumstances of this case, the defense's reliance upon the government expert's limited testimony coupled with their approach to having no witnesses testify or otherwise offer written statements or endorsements was deficient. Based on the record before us, the sentencing case was objectively unreasonable and falls short of prevailing professional norms. This deficiency resulted in an unreliable sentence and we conclude that a sentence rehearing rather than a reassessment is warranted. We will order a rehearing on sentence, where appellant will have the opportunity to present a case in extenuation and mitigation with new counsel. *See United States v. Boone*, 49 M.J. 187, 198-199 (C.A.A.F. 1998); *Weathersby*, 48 M.J. at 673.

*Unreasonable Multiplication of Charges*

Typically, we review issues of unreasonable multiplication of charges for an abuse of discretion. *United States v. Pauling*, 60 M.J. 91, 95 (C.A.A.F. 2004). Here, although appellant failed to raise the issue at trial, the issue was not expressly waived and we will review using the plain error standard. *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009). Appellant must "demonstrate that: (1) there was error; (2) [the error] was plain or obvious; and (3) the error materially prejudiced a substantial right of the appellant." *United States v. Harcrow*, 66 M.J. 154, 158 (C.A.A.F. 2008) (internal quotation marks and citation omitted). We find the error here to be plain and obvious.

During appellant's providence inquiry regarding Specification 1 of Charge III, he described one instance of sexual assault of AJW by penetrating her mouth with his penis on or about 28 July 2012. Later, during the inquiry into the sodomy charge in Specification 2 of Charge IV, appellant described this very same act as one of the two acts supporting his providence to the "divers occasions" alleged in the specification. The military judge merged the two specifications, but only for purposes of sentencing. Thus, the offense of sexual assault and sodomy are based, in part at least, on the very same act.

"What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." R.C.M. 307(c)(4). We consider five factors to determine whether charges have been unreasonably multiplied:

> (1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?;
>
> (2) Is each charge and specification aimed at distinctly separate criminal acts?;
>
> (3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?;
>
> (4) Does the number of charges and specifications [unreasonably] increase the appellant's punitive exposure?; and
>
> (5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

*United States v. Quiroz*, 55 M.J. 334, 338 (C.A.A.F. 2001) (internal quotation marks and citation omitted).

Under the facts of this case, appellant's penetration of AJW's mouth with his penis on or about 28 June 2012 is one criminal act and charging and convicting appellant of this act in two different ways unreasonably exaggerates his criminality. The second and third *Quiroz* factors balance in favor of appellant. *See United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012) (noting one or more factors may be sufficiently compelling, without more, to warrant relief). Accordingly, we will dismiss Specification 1 of Charge III as an unreasonable multiplication of charges.

Since our resolution of the first issue discussed above necessitates a sentence rehearing, any reassessment here is unnecessary.

## CONCLUSION

On consideration of the entire record, including those issues raised personally by appellant, the findings of guilty of Specification 1 of Charge III are set aside and that specification is DISMISSED. The remaining findings of guilty are AFFIRMED. The sentence is set aside. The same or a different convening authority may order a rehearing on sentence.[2]

---

[2] *See generally* R.C.M. 810(a)(2)-(3), (d)(1), and (e).

Senior Judge COOK and Judge HAIGHT concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court