UNITED STATES, Appellee

v

ELMER JOHNSON, JR., Private, U. S. Army, Appellant

21 USCMA 279, 45 CMR 53

No. 24,500

March 31, 1972

*Captain Terrence Ahern* argued the cause for Appellant, Accused. With him on the brief were *Colonel George J. McCartin, Jr.,* and *Captain Gary W. Allman.*

*Captain Walter A. Smith, III,* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant* and *Lieutenant Colonel Ronald M. Holdaway.*

## Opinion of the Court

DUNCAN, Judge:

The use of language, from which the trier of the facts can conclude beyond a reasonable doubt amounts to an avowed present determination or intent to injure another presently or in the future, is criminally actionable as being violative of Article 134, Uniform

Code of Military Justice, 10 USC § 934. United States v Gilluly, 13 USCMA 458, 32 CMR 458 (1963); ▆▆▆▆▆ ▆ United States v Sulima, 11 USCMA 630, 29 CMR 446 (1960); United States v Humphrys, 7 USCMA 306, 22 CMR 96 (1956); United States v Holiday, 4 USCMA 454, 16 CMR 28 (1954); United States v Sturmer, 1 USCMA 17, 1 CMR 17 (1951); United States v Metzdorf, 252 Fed 933 (D Mont) (1918).

In Watts v United States, 394 US 705, 707, 22 L Ed 2d 664, 667, 89 S Ct 1399 (1969), the Supreme Court admonishes, as follows:

". . . [A] statute . . . which makes criminal a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind. What is a threat must be distinguished from what is constitutionally protected speech."

Our former decisions also instruct that the circumstances surrounding the uttering of the words ▆▆▆▆▆ ▆ and consideration of whether the words were stated in jest or seriousness are to be evaluated in appraising the legal sufficiency of the evidence to sustain a conviction of communicating a threat. United States v Schmidt, 16 USCMA 57, 36 CMR 213 (1966); United States v Humphrys, supra. *Watts*, supra, announces that mere statements of political hyperbole are constitutionally protected. In United States v Shropshire, 20 USCMA 374, 43 CMR 214 (1971), this Court held that where an utterance is stated to be conditional on a variable that cannot occur, the condition negates the threat.

Within the above legal perimeter we must decide whether the testimony regarding the words the appellant stated to another are sufficient to sustain his conviction of communicating a threat.

At Cu Chi Base Camp, Private First Class Church was housed in a guard "hootch" along with Specialist Four Irizarry, Private First Class Rodriguez, and others.

On August 24, 1970, at approximately 9:30 or 10:00 p.m., Church stated he saw the appellant enter the room, where Church was in bed, and remove a large box and a small object from the area near Irizarry's bed. The next morning Church told Irizarry what he had observed. Irizarry discovered that his record player and camera were missing. Church reported his observations and Irizarry's loss to the company commander. The company commander on August 28, 1970, at about 1:00 p.m., informed Johnson of Church's account of his (Johnson's) acts on August 24, and read to him a charge of larceny which was brought against him. The same day, sometime between 1:00 and 2:00 p.m., Johnson went to the guard hootch and spoke with Church. Church testified as follows regarding this confrontation:

"Q. What was he saying to you?
"A. Well, first of all he asked me how could I accuse him of stealing this, and then he was saying, after I told him about it, he called me a liar for one thing. And then he said, 'I am not threatening you, but I am telling you that I am not personally going to do anything to you, but in two days you are going to be in a world of pain. I would suggest you damn well better sleep light.'

"Q. Did he say anything to you about jail?
"A. He said, 'Because of your false accusation, because of your accusing me of this, I got six months and a DD.'"

Rodriguez stated he was present during the conversation and that although he did not understand all of it, he heard Johnson say " 'I have six months in jail, but I have two days to f—— you.' "

Our determination, herein, is confined to an inquiry into the sufficiency of the evidence upon which Johnson was convicted of communicating a threat in violation of Article 134, Code, supra. However, upon trial by a military judge alone, the appellant also was convicted of failing to appear, ab-

**280**

sence without leave, unlawful entry, and breaking restriction. For the conviction of all offenses, his sentence as approved was to a bad-conduct discharge, partial forfeitures, and confinement at hard labor for four months.

We are convinced that the Government's evidence comfortably survives the test for sufficiency.

Both in brief and oral argument, appellate defense counsel stress that accused's language, as ▪ related by the Government's witnesses, is fatally wanting in that it neither connects the appellant with the portended harm nor suggests that harm would come by any specific means. Appellant would have us decide as a matter of law that the utterances were hyperbole and do not offend Article 134. He highlights this contention by calling attention to the words which he claims amount to a specific disclaimer of personal action directed toward Church—" 'I am not threatening you, but I am telling you that I am not personally going to do anything to you.' "

Appellant's comments are to be examined by looking to the component words and their total meaning impact. Moreover, after an appraisal of the comments based on common ordinary meaning as well as the reasonable, connoted meaning in the military environment where stated, the trier of the facts has the duty to decide whether the language used is sufficient to hold an accused criminally responsible. We are convinced that the finder of the facts could find beyond a reasonable doubt that an unequivocal threat was communicated.

In United States v Mawhinney, 11 USCMA 350, 351, 29 CMR 166 (1960), this Court held that the following language unlawfully communicated a threat:

"... '[Y]ou done crossed me up, buddy; that could cost you your life. Yeah, you could die for that. You better not go to sleep at night without a knife under your pillow.' "

Johnson's statement of disclaimer of personal involvement when viewed with the totality of the circumstances and the balance of his remarks do not downgrade the sufficiency of the evidence. If the phrase of disclaimer were so effective as appellant urges, such would provide a most foolproof means of avoiding criminal sanction for communicating a threat, no matter how strongly worded the language following the disclaimer. Our law is not so lethargic as to live with that kind of result.

The decision of the Court of Military Review is affirmed.

Chief Judge DARDEN and Judge QUINN concur.