UNITED STATES

v.

Colin C. BEWSEY, Airman Recruit (E–1), U.S. Navy.

NMCM 200000091.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 25 Aug. 1999.

Decided 9 March 2001.

LCDR Michael J. Wentworth, JAGC, USN, Appellate Defense Counsel.

LT William C. Minick, JAGC, USNR, Appellate Government Counsel.

Before DORMAN, Senior Judge, OZMUN and NAUGLE, Appelllate Military Judges.

DORMAN, Senior Judge:

The appellant stands convicted by a special court-martial consisting of a military judge sitting alone. At trial the appellant plead guilty to three specifications of being incapacitated to perform his duties due to the prior wrongful indulgence in alcohol, and a single specification of communicating a threat to injure. These four specifications were all violations of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The approved sentence includes confinement for 120 days, forfeiture of $600 pay per month for four months, and a bad-conduct discharge. In taking his action, the convening authority suspended confinement in ex-

cess of 82 days for a period of six months from the date of trial. This suspension conformed to the terms of the appellant's pretrial agreement.

We have carefully reviewed the record of trial, the appellant's two assignments of error, and the Government's response. We find merit in the appellant's first assignment of error. Following our corrective action, we conclude that the remaining findings and the reassessed sentence are correct in law and fact and that no error remains that is materially prejudicial to the substantial rights of the appellant. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

**Facts.** On the evenings of 13 and 20 May, and 3 June 1999 the appellant went out drinking. He drank excessively and returned to his barracks between 0200 and 0430 on each of the following mornings. On the 14th and 21st of May the appellant had duty and was due to report to work at 0530 each day. On 4 June, the appellant was to report to his Executive Officer's office at 0730. On each day, after the time the appellant was due to report for duty, his leading petty officer found the appellant intoxicated in his rack in his barracks room. On each occasion the appellant was unable to perform his duties.

On 4 June 1999, the appellant was scheduled to go to Captain's Mast. Eventually he was taken to see the Commanding Officer, who ordered that the appellant be placed in pretrial confinement. The legal officer of the appellant's squadron, LT Reynolds, was present when that occurred and was with the appellant shortly thereafter in the squadron hallway. The appellant was not pleased with the decision that had been made to send him into pretrial confinement and did not like the way LT Reynolds was treating him. The appellant was still intoxicated and was angry. In that condition, he told LT Reynolds that, "I'd be seeing him later." Record at 34. LT Reynolds did not react to the statement and "kept going about his business." *Id.* at 36.

During the providence inquiry concerning this alleged threat, the appellant told the military judge that he "communicated a threat" to the Lieutenant, but that he did not

"intend to act on any threat I made." *Id.* at 34. The military judge advised the appellant that one of the elements of the offense was that the "language used by you under the circumstances amounted to a threat, that is, a clear and present determination or intent to injure the person in the future." *Id.* at 33. The appellant was never asked whether the elements described what he did. Furthermore, the appellant was never asked, nor did he explain during the providence inquiry, what he meant by the words alleged to be a threat. Paragraph 15 of a stipulation of fact, however, admitted as Prosecution Exhibit 1 before the providence inquiry began, states, "the accused's comment expressed his intent to wrongfully intimidate or place LT Reynolds in fear of bodily harm. . . ." At no time during the providence inquiry did the military judge ask, nor did the appellant explain, whether the language used expressed a clear and present determination or intent to injure LT Reynolds in the future. The stipulation of fact did not address this issue either.

## Providence of the Plea to the Threat

In his first assignment of error, the appellant argues that the military judge erred in accepting a guilty plea to communicating a threat because "neither the language, on its face, nor the circumstances communicated a present determination or intent to wrongfully injure." Appellant's Brief of 25 May 2000 at 2. We agree that the appellant's guilty plea to this offense was not provident. While the appellant argues that neither the language used, nor the surrounding circumstances were sufficient to constitute a threat, we find the appellant's plea improvident on slightly different grounds.

■■■■ A military judge may not accept a guilty plea to an offense without inquiring into its factual basis. *United States v. Care,* 18 C.M.A. 535, 541, 40 C.M.R. 247, 253, 1969 WL 6059 (1969); Art. 45(a), UCMJ, 10 U.S.C. § 845(a). Before accepting a guilty plea, the military judge must explain the elements of the offense and ensure that a factual basis for the plea exists. *United States v. Faircloth,* 45 M.J. 172, 174 (1996); *United States v. Davenport,* 9 M.J. 364, 367 (C.M.A.1980). Mere conclusions of law recited by the accused are insufficient to provide a factual basis for a guilty plea. *United States v. Outhier,* 45 M.J. 326, 331 (1996)(citing *United States v. Terry,* 21 C.M.A. 442, 45 C.M.R. 216, 1972 WL 14158 (1972)). The accused "must be convinced of, and able to describe all the facts necessary to establish guilt." RULE FOR COURTS-MARTIAL 910(e), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.), Discussion. Acceptance of a guilty plea requires the accused to substantiate the facts that objectively support his plea. *United States v. Schwabauer,* 37 M.J. 338, 341 (C.M.A.1993); R.C.M. 910(e).

■■■■ A military judge, however, may not "arbitrarily reject a guilty plea." *United States v. Penister,* 25 M.J. 148, 152 (C.M.A. 1987). The standard of review to determine whether a plea is provident is whether the record reveals a substantial basis in law or fact for questioning the plea. *United States v. Prater,* 32 M.J. 433, 436 (C.M.A.1991). Such rejection must overcome the generally applied waiver of the factual issue of guilt inherent in voluntary pleas of guilty and the only exception to the general rule of waiver arises when an error prejudicial to the substantial rights of the appellant occurs. Art. 59(a), UCMJ; R.C.M. 910(j). Furthermore, in a guilty plea case, the military judge must resolve inconsistencies and apparent defenses, or the guilty plea must be rejected. *Outhier,* 45 M.J. at 331.

■■■■ The gravamen of a threat is the "audible pronouncement of an intent or determination to injure." *United States v. Humphrys,* 7 C.M.A. 306, 312, 22 C.M.R. 96, 102, 1956 WL 4743 (1956). In a contested case, "the government must show the use of language from which the triers of facts could conclude beyond a reasonable doubt that a present determination or intent to injure, presently or in the future, had been expressed." *United States v. Bush,* 47 C.M.R. 532, 540, 1973 WL 14777 (C.G.C.M.R. 1973) (citing *United States v. Johnson,* 21 C.M.A. 279, 45 C.M.R. 53, 1972 WL 14120 (1972)). In interpreting the language used in communicating the threat, the Coast Guard Court found that it was appropriate to give the words used their ordinary meaning. *Bush,* 47 C.M.R. at 540. Although *Bush* concerned the sufficiency of evidence used in

that case, the court found that the language "I am going to pass the word on you" did not constitute a threat to inflict physical injury—even where the victim testified that he believed that is what the accused had intended.[1]

■ In *United States v. Fishwick*, 25 C.M.R. 897, 1958 WL 3276 (A.F.B.R.1958) the accused was charged with threatening to injure a lieutenant by pointing a pistol at him and saying, "Turn that music off and keep it off, do you understand, do you understand." *Fishwick*, 25 C.M.R. at 899. On appeal Fishwick argued that the specification failed to allege an offense, and the Air Force Board of Review agreed. The Board noted that one essential element of a threat is that "within its language the accused declared his purpose or intent to do an act which was wrongful." *Id.* (quoting *United States v. Davis*, 6 C.M.A. 34, 19 C.M.R. 160, 1955 WL 3415 (1955)). In *Fishwick*, the Board of Review found that the language cited above failed to state an offense because "[t]here [was] no oral or written declaration of the intent to injure." *Fishwick*, 25 C.M .R. at 899. Additionally, in *United States v. Phillips*, 42 M.J. 127 (1995) our superior court established an objective test to determine whether a threat had been communicated. Specifically, the court was concerned with "whether a reasonable factfinder could conclude beyond a reasonable doubt that a reasonable person in the [victim's] place would perceive the contested statement by [the] appellant to be a threat." *Phillips*, 42 M.J. at 130.

■ While we are cognizant of the fact that *Bush*, *Fishwick*, and *Phillips* were all contested cases, they provide a useful analytical framework for the case before us. We note that the language used by the appellant informed LT Reynolds that the appellant would be seeing him soon. Applying the ordinary meaning to those spoken words, they do not convey either a threat to injure or that he was going to engage in some unlawful act. Would a reasonable person in LT Reynolds place "perceive the contested statement by [the] appellant to be a threat?" *Id.* Although this is a guilty plea case, we

should still be able to answer that relevant question based upon our review of the record of trial. The answer, however, is not there because the military judge did not ask the appellant whether the language used conveyed a present determination to injury LT Reynolds at some time in the future. That is a key element to this offense.

The Government seeks to rely upon the stipulation of fact to address this issue, and upon initial reading one could conclude that paragraph 15 of Prosecution Exhibit 1 does just that. We, however, reach a different conclusion. Paragraph 15 details what the appellant's intent was at the time he made the statement that he would be seeing the lieutenant later. The appellant's intent, however, is not the proper focus because a threat is not a specific intent offense. *Id.* at 129–30; *United States v. Gilluly*, 13 C.M.A. 458, 461, 32 C.M.R. 458, 461, 1963 WL 4582 (1963); *Humphrys*, 7 C.M.A. at 307–08, 22 C.M.R. at 97–98. Thus, the fact the appellant intended to intimidate or place LT Reynolds in fear of bodily harm, does not address the question of whether, based upon language used and all the surrounding circumstances, a reasonable person would have felt threatened. The record does not answer the question and the providence inquiry even suggests that Lieutenant Reynolds did not feel threatened. When the military judge asked the appellant how the lieutenant reacted the appellant stated that the lieutenant, "[d]idn't really take it at all, sir. He just kept going about his business." Record at 36. This inconsistency was never resolved.

We find that the appellant never addressed the essential element of whether under the circumstances the language he used could have been viewed objectively as a clear and present determination or intent to injure LT Reynolds. This critical issue was not resolved during the providence inquiry. Although the appellant did indicate that he had threatened LT Reynolds, that statement is nothing more than a conclusion of law. A thorough providence inquiry requires more than that. *Outhier*, 45 M.J. at 331. Accord-

---

1. *See also United States v. Gionfriddo*, 39 C.M.R. 602, 608, 1968 WL 5146 (A.B.R.1968)(finding the language "I'll get even with you" to be insufficient to allege a threat).

ingly, we find that the appellant's guilty plea to Specification 4 under Charge III is improvident. We do not find, however, that the specification failed to state an offense. We cannot reach that conclusion because of the objective standard addressed in *Phillips.* Had the military judge asked the right questions and the appellant provided answers that satisfied the deficiencies we have noted, we are confident in the sufficiency of the specification itself. We will provide appropriate relief in our decretal paragraph.[2]

### Preemption

In his second summary assignment of error the appellant argues that the military judge erred in accepting his guilty pleas to Specifications 1–3 of Charge III, which allege incapacitation to perform duties due to the prior wrongful consumption of alcohol. The appellant argues that since he failed to report for duty, through application of the preemption doctrine, he should have been charged with failing to go to his appointed place of duty under Article 86 on each of the three occasions. Appellant's Brief of 25 May 2000 at 4–5.

The preemption doctrine is set forth in the MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.), Part IV, ¶ 60c(5) and "prohibits application of Article 134 to conduct covered by Articles 80 through 132." It is designed to prevent the Government from creating new offenses in an attempt to compensate for its inability to establish an element of an enumerated offense. Preemption occurs when it can be "shown that Congress intended ... [an]other punitive article to cover a class of offenses in a complete way." *United States v. Kick,* 7 M.J. 82, 85 (C.M.A. 1979). No such showing has been made in this case.

The appellant argues that the gravamen of his offenses under Specifications 1–3 of Charge III is that he failed to go to his appointed place of duty. This argument, however, is undercut by the fact that the MCM, Part IV, ¶ 76 specifically addresses the appellant's misconduct as acknowledged by his guilty pleas. This assignment of error is without merit.[3]

### Conclusion

In light or our resolution of the appellant's first assignment of error, we set aside and dismiss the finding of guilty to Specification 4 of Charge III. As a result of our action on the findings, we have reassessed the sentence in accordance with the principles of *United States v. Cook,* 48 M.J. 434, 438 (1998), *United States v. Peoples,* 29 M.J. 426, 428 (C.M.A.1990), and *United States v. Sales,* 22 M.J. 305, 307–08 (C.M.A.1986).

Upon reassessment of the sentence, we approve only so much of the sentence as extends to confinement for 60 days, forfeiture of $600 pay per month for two months, and a bad-conduct discharge. A new promulgating order, reflecting the findings and sentence as modified by this decision, shall be issued.

Judge OZMUN and Judge NAUGLE concur.

---

2. We have considered affirming a conviction under the facts of this case to Article 89, UCMJ, 10 U.S.C. § 889, as a "lesser included offense" of disrespect to a superior commissioned officer. We have declined to do so because the specification as alleged does not state that LT Reynolds was a superior commissioned officer to the appellant, and that the appellant knew that he was.

*See United States v. Ross,* 40 C.M.R. 718, 1969 WL 6180 (A.B.R.1969).

3. Although we have decided this issue on the merits, we also find that the appellant's failure to raise this issue at trial constituted waiver, as did his guilty pleas to these offenses. R.C.M 905(e) and 910(j).