**UNITED STATES**

v.

**Matthew J. TENNEY, First Lieutenant
(O–2), U.S. Marine Corps.**

**NMCCA 200200727.**

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 13 July 2001.

Decided 7 Jan. 2005.

Lt Colin Kisor, JAGC, USNR, Appellate Defense Counsel.

Lt Guillermo Rojas, JAGC, USNR, Appellate Government Counsel.

Lt Lars C. Johnson, JAGC, USNR, Appellate Government Counsel.

Before CARVER, Senior Judge, RITTER, Senior Judge, and WAGNER, Appellate Military Judge.

CARVER, Senior Judge:

A military judge, sitting as a general court-martial, convicted the appellant, pursuant to his pleas, of attempted desertion terminated by apprehension, making a false official statement, five specifications of forgery, wrongful impersonation of an officer with intent to defraud, and bank fraud under 18 United States Code § 1344, in violation of Articles 85, 107, 123, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 885, 907, 923, and 934.

Upon motion by the appellant prior to sentencing, the military judge merged the five specifications of forgery with the offense of bank fraud and merged the offense of making a false official statement with the offense of wrongful impersonation of an officer with intent to defraud. The appellant was sentenced to a dismissal, confinement for 9 years, and total forfeiture of pay and allowances. Pursuant to a pretrial agreement, the convening authority approved the sentence as adjudged, but suspended all confinement over 96 months.

The appellant claims that (1) the federal offense of bank fraud is preempted by the military offense of fraud against the United States or by the military offense of attempted larceny; (2) the military judge erred in ruling on the maximum confinement for bank fraud; (3) attempted desertion and wrongful impersonation of an officer with intent to defraud were an unreasonable multiplication of the charge of bank fraud; and (4) the appellant was subjected to illegal pretrial punishment.

After carefully considering the record of trial, the appellant's assignments of error, the Government's response, and oral argument on the first two assignments of error,[1] we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

**Facts**

While deployed with the 13th Marine Expeditionary Unit (MEU) overseas, the appellant decided to obtain funds by defrauding the Los Angeles, California, branch of the Federal Reserve Bank (FRB) of San Francisco, California. In furtherance of that goal, he conducted research and obtained information from the MEU disbursing officer about the procedures used to request and procure

---

1. On 6 July 2004, after we scheduled this case for oral argument on 14 September 2004, the appellant moved for expedited review, requesting that we complete our review by 23 August 2004 or, in the alternative, release the appellant from confinement pending resolution of his appeal. Motion for Leave to File and Motion to Expedite Appellate Review of 6 Jul 2004. We denied the motion, but stated that "following oral argument on 14 September 2004, the appellant's case will receive expedited review." N.M.Ct.Crim.App. Order of 20 Jul 2004. Counsel subsequently notified this court that our date for oral argument conflicted with a mandatory orientation training session called by the Court of Appeals for the Armed Forces. We therefore rescheduled oral argument for the next available date. N.M.Ct.Crim.App. Order of 30 Aug 2004. Oral argument was conducted on 1 October 2004.

large sums of currency for Marine deployments.

Upon his return to Camp Pendleton, the appellant put his scheme into operation. His plan was to divert approximately $2,749,000.00 in cash for an upcoming 11th MEU deployment into his own hands by tricking all parties into believing that he was the proper representative to receive funds on behalf of the MEU. While the 11th MEU was conducting training prior to deployment, the appellant made several telephone calls and submitted false or forged facsimiles and other documents to the FRB, claiming to be First Lieutenant (1stLt) S, the disbursing officer for the 11th MEU. On one of the documents, he forged the name of the commander, Colonel P, on a document which authorized 1stLt S to obtain funds for the military operation. He also made telephone calls and submitted false or forged documents to Brink's in San Diego, California, claiming to be 1stLt S. The telephone calls and false or forged documents were designed to mislead the proper authorities into delivering cash in a Brink's armored car to the appellant at Camp Pendleton.

Ordinarily, deployment funds were delivered directly to a naval ship at the pier. Since the delivery would be made to a location aboard Camp Pendleton, a Brink's employee called the 11th MEU office to discuss and confirm the change in delivery location and to advise that the change would result in a different delivery fee. The real 1stLt S answered the telephone and denied that he had requested that the cash be delivered to Camp Pendleton. The Naval Criminal Investigative Service (NCIS) and the Federal Bureau of Investigation (FBI) were notified.

After a preliminary investigation, NCIS and FBI investigators were convinced that someone was attempting to defraud the FRB, but they did not know the identity of the perpetrator. Under the direction of the FBI, Brink's contacted the appellant to arrange a meeting in San Diego, ostensibly to go over the final details of the delivery. The appellant arrived for the meeting in a Marine Corps camouflage utility uniform with the nametape of 1stLt S on the jacket. While there, he made numerous false statements and misrepresentations that he was 1stLt S. He also forged 1stLt S's name on two documents. The meeting was secretly filmed and audio taped. During the meeting, the FBI also placed a transponder on the appellant's car in order to track it.

After the meeting with Brink's, the appellant drove to San Clemente, California, to change clothing. He also made reservations for two one-way airline tickets to Rio de Janeiro, Brazil, departing the next day. He drove to a bank to withdraw $3500.00 from his personal account, then drove to a Wal-Mart store to purchase luggage. The FBI was tracking his movements. In the Wal-Mart parking lot, the appellant became suspicious when he saw someone, who was later identified as an FBI agent, taking his photograph. The appellant then picked up his Brazilian girl friend and took her to her residence in Laguna Hills, California. The appellant told her that plan "A" did not work and that he had to leave the country. He stayed overnight at his girl friend's house. The appellant was on leave. The next morning, his girl friend refused to drive him to the airport. The appellant drove himself to John Wayne Airport for connecting flights to Rio de Janeiro. Just before arriving at the airport, FBI agents arrested the appellant. The appellant intended to leave the country and never return to the Marine Corps.

## Bank Fraud

### Preemption Doctrine

■ In his first assignment of error, the appellant contends that his conviction under the federal bank fraud statute is preempted either by the military offense of fraud against the United States or by the military offense of attempted larceny. He argues that we must disapprove the finding of guilty to bank fraud and that we may only approve a finding of guilty either to Article 132 or to Article 80, UCMJ. We disagree and decline to grant relief.

The preemption doctrine prohibits application of Article 134 to conduct covered by Articles 80 through 132. For example, larceny is covered in Article 121, and if an element of that offense is lacking—for example, intent—there can be no larceny or

larceny-type offense, either under Article 121 or, because of preemption, under Article 134. Article 134 cannot be used to create a new kind of larceny offense, one without the required intent, where Congress has already set the minimum requirements for such an offense in Article 121.

MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.), Part IV, ¶ 60c(5)(a). The appellant was convicted of federal bank fraud in violation of 18 U.S.C. § 1344, charged as a violation of clause 3 of Article 134, UCMJ, which provides:

*Crimes and offenses of unlimited application.* Certain noncapital crimes and offenses prohibited by the United States Code are made applicable under clause 3 of Article 134 to all persons subject to the code regardless where the wrongful act or omission occurred. Examples include: counterfeiting (18 USC § 471), and various frauds against the Government not covered by Article 132.

MCM, Part IV, ¶ 60c(4)(b). The Government claims that the preemption doctrine only applies to convictions under clauses 1 and 2 of Article 134, but does not apply at all to convictions of federal criminal statutes under clause 3 of Article 134. In support, the Government quotes *United States v. Bewsey,* 54 M.J. 893, 897 (N.M.Ct.Crim.App.2001), that preemption is "designed to prevent the Government from creating new offenses in an attempt to compensate for its inability to establish an element of an enumerated offense." Government's Brief of 1 Apr 2003 at 3.

We reject the notion that the preemption doctrine does not apply to federal criminal statutes. We find nothing in the *Bewsey* opinion to support that theory. We note that the language in the Manual is not so limited. Further, several other appellate opinions have stated or implied that the doctrine applies to violations of federal criminal statutes charged under Article 134(3). *See United States v. Arriaga,* 49 M.J. 9, 12–13 (C.A.A.F. 1998); *United States v. McGuinness,* 35 M.J. 149, 151–52 (C.M.A.1992); *United States v. Cartwright,* 13 M.J. 174, 176–77 (C.M.A. 1982).

■ In order to determine if federal bank fraud is preempted, we must compare the offenses. The elements of the federal offense of bank fraud are:

Whoever knowingly executes, or attempts to execute, a scheme or artifice—

(1) to defraud a financial institution; or

(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344. There is little question that the appellant's misconduct violated both clauses of the bank fraud statute listed above. In fact, the appellant has not argued that his plea of guilty to bank fraud was improvident. Instead, the appellant avers that his misconduct also violated clauses 1(a), 1(b), 2(a), or 2(c) of Article 132, UCMJ, as follows:

Any person subject to this chapter—

(1) who, knowing it to be false or fraudulent—

(a) makes any claim against the United States or any officer thereof; or

(b) presents to any person in the civil or military service thereof, for approval or payment, any claim against the United States or any officer thereof;

(2) who, for the purpose of obtaining the approval, allowance, or payment of any claim against the United States or any officer thereof—

(a) makes or uses any writing or other paper knowing it to contain any false or fraudulent statements;

. . . .

(c) forges or counterfeits any signature upon any writing or other paper, or uses any such signature knowing it to be forged or counterfeited;

. . . .

shall, upon conviction, be punished as a court-martial may direct.

Art. 132, UCMJ. The appellant contends that he filed a claim, within the meaning of the statute, because the false paperwork he filed was "a demand for a transfer of ownership of money." On the other hand, the Government contends that the word "claim" under Article 132, UCMJ, clauses (1) and (2), prohibits only the filing of false personal claims against the Government. In support, the Government cites a number of cases that affirm false personal claims for travel claims or housing allowances.

We are persuaded by the Government's argument. We hold that an Article 132 false "claim" against the Government must be made under the color of personal entitlement for the money or property. The appellant did not at any time falsely assert that he was personally entitled to the money. Instead, he falsely asserted that he was the proper representative to receive money for use by his military unit. Thus, we find that his misconduct did not violate Article 132.

We will now turn to the offense of attempted larceny. The appellant contends that his misconduct also violated Articles 80 and 121, UCMJ, attempted larceny. The elements of that offense are:

(a) That the accused wrongfully ... obtained [wrongfully attempted to obtain] ... certain property from the possession of the owner or of any other person;

(b) That the property belonged to a certain person;

(c) That the property was of a certain value, or of some value; and

(d) That the ... [attempted] obtaining ... by the accused was with the intent permanently to ... defraud another person of the use and benefit of the property....

MCM, Part IV, ¶ 46b [elements modified to reflect attempted larceny by a wrongful obtaining]. "[A] wrongful obtaining with intent permanently to defraud includes the offense formerly known as obtaining by false pretense...." MCM, Part IV, ¶ 46c(1)(a). "[I]f an accused enticed another's horse into the accused's stable without touching the animal, or procured a railroad company to delivery another's trunk by changing the check on it, or obtained the delivery of another's goods to a person or place designated by the accused,

or had the funds of another transferred to the accused's bank account, the accused is guilty of larceny if the other elements of the offense have been proved." MCM, Part IV, ¶ 46c(1)(b).

■ We agree with the appellant that his misconduct violated Articles 80 and 121, attempted larceny, but that does not end the inquiry. The MCM codified the military common law preemption doctrine that:

where Congress has occupied the field of a given type of misconduct by addressing it in one of the specific punitive articles of the code, another offense may not be created and punished under Article 134, UCMJ, by simply deleting a vital element.

McGuinness, 35 M.J. at 151 (quoting United States v. Kick, 7 M.J. 82, 85 (C.M.A.1979)). Our superior court has held that preemption applies where both of the following questions are answered affirmatively:

The primary question is whether Congress intended to limit prosecution for wrongful conduct within a particular area or field to offenses defined in specific articles of the Code; the secondary question is whether the offense charged is composed of a residuum of elements of a specific offense and asserted to be a violation of either Articles 133 or 134, which, because of their sweep, are commonly described as the general articles.

McGuinness, 35 M.J. at 151–52 (quoting United States v. Wright, 5 M.J. 106, 110–11 (C.M.A.1978)). In respect to Article 121, UCMJ, we answer both questions in the negative. We have found no indication, and the appellant has cited us to no authority, that Congress intended by the creation of Article 121, UCMJ, to cover the entire field of larceny. On the contrary, our superior court has affirmed at least one other larceny-type offense that was charged under Article 134, UCMJ. United States v. Thurman, 27 C.M.R. 451, 454–55, 1959 WL 3649 (C.M.A.1959)(holding that the offense of larceny of mail matter, charged under Article 134, UCMJ, includes the elements of the lesser included offense of larceny under Article 121, UCMJ).

We also answer the second question in the negative. As noted above, the federal bank fraud statute is not a residuum of elements of larceny, but rather, requires that the Government prove an additional element, namely, that the appellant defrauded a financial institution. We therefore hold that Articles 80 and 121, UCMJ, do not preempt the federal bank fraud statute, 18 U.S.C. § 1344.

## Bank Fraud

### Maximum Punishment Authorized

The appellant next contends that the military judge erred when he ruled that the maximum punishment for violation of 18 U.S.C. § 1344 included confinement for 30 years. The appellant claims that the maximum confinement authorized is 5 years because bank fraud is closely related either to fraud against the United States or larceny. We disagree.

The maximum punishment for offenses not listed in Part IV of the Manual is the same as that listed for a closely-related offense in Part IV. If there are no closely-related offenses, then the maximum punishment is the same as that authorized by the United States Code. R.C.M. 1003(c)(1)(B)(i)-(ii).

At the time of this court-martial, the maximum authorized confinement was 5 years for either fraud against the United States or for attempted larceny of property of a value in excess of $100.00. The military judge ruled that the federal bank fraud statute was not closely related to either military offense and that the maximum confinement was 30 years, as authorized by the United States Code.

In the previous section of this opinion, we held that the appellant's misconduct did not violate Article 132. Consequently, we find that his offense was not closely related to Article 132. Further, we held that attempted larceny was a lesser included offense of bank fraud. We must necessarily find that the greater offense is not closely related to the lesser offense.

Thus, we hold that the military judge did not err in determining that the maximum confinement for bank fraud was 30 years. See United States v. Hopkins, 55 M.J. 546, 549 (A.F.Ct.Crim.App.2001)(holding that 18 U.S.C. § 1546, knowingly making false statements on visa applications, was not closely related to Article 107, UCMJ, false official statements).

### Remaining Assignments of Error

We have carefully considered the appellant's remaining two assignments of error [2] and find them without merit.

### Conclusion

Accordingly, the findings of guilty and sentence, as approved by the convening authority, are affirmed.

Senior Judge RITTER and Judge WAGNER concur.

---

**2.** III. THE MILITARY JUDGE SHOULD HAVE COMBINED SPECIFICATION 1 OF CHARGE II, ATTEMPTED DESERTION, AND CHARGE V, SPECIFICATION 1, IMPERSONATING AN OFFICER, AND CHARGE V, SPECIFICATION 2, BANK FRAUD, WHERE ALL OF THE SPECIFICATIONS WERE PART OF THE SAME CONDUCT AND WHERE THE CHARGED CONDUCT OF IMPERSONATION WAS THE VERY MEANS BY WHICH THE BANK FRAUD WAS COMMITTED.

IV. APPELLANT WAS SUBJECTED TO ILLEGAL PRETRIAL CONFINEMENT UNDER ARTICLE 13, UCMJ, FOR BEING PLACED IN SPECIAL QUARTERS.