# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
YOB, GALLAGHER, and KRAUSS
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Master Sergeant MARK S. ASHLEY**
**United States Army, Appellant**

ARMY 20120566

Headquarters, United States Army Training Center and Fort Jackson
Gregory B. Batdorff, Military Judge
Colonel Mark W. Seitsinger, Staff Judge Advocate (pretrial)
Lieutenant Colonel Eric K. Stafford, Acting Staff Judge Advocate (recommendation)
Colonel Steven B. Weir, Staff Judge Advocate (addendum)

For Appellant: Captain Robert A. Feldmeier, JA; Captain Matthew M. Jones, JA (on brief).

For Appellee: Major Robert A. Rodrigues, JA (on brief).

31 July 2013

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

YOB, Senior Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of indecent conduct, indecent exposure, indecent language, attempted enticement of a minor to engage in unlawful sexual activity in violation of 18 U.S.C. § 2422(b), enticement of a minor to produce child pornography in violation of 18 U.S.C. § 2251, distribution of child pornography, and unauthorized wear of the Combat Infantryman's Badge, in violation of Articles 120 and 134 Uniform Code of Military Justice, 10 U.S.C. § 920, 934 (2006) [hereinafter UCMJ]. The military judge sentenced appellant to a dishonorable discharge, confinement for eight years, and reduction to the grade of E-1. Pursuant to a pretrial agreement, the

convening authority approved forty-eight months confinement and the remainder of the adjudged sentence.

This case is before this court for review under Article 66, UCMJ. Appellant raises several matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) and no other assignments of error. We have considered appellant's *Grostefon* matters and find that they are without merit. Although not raised by appellant, we find Specifications 1 and 2 of Charge I are multiplicious. We also find that Specifications 1 and 2 of Charge II constitute an unreasonable multiplication of charges. In light of this, we will take appropriate action in our decretal paragraph below.

## FACTS

In December 2010, appellant initiated contact with thirteen year old RW, via MySpace a social networking internet site. During their initial conversation, appellant asked RW if she was "ready for an older man to take care of [her.]" Despite RW telling appellant that she was thirteen, appellant maintained regular contact with RW. A short time afterwards, RW and appellant started communicating via mobile phone text messaging where the conversations turned decidedly sexual in nature.

Over approximately a five week period, appellant engaged in several sexually charged conversations with RW. Appellant repeatedly asked RW to send him nude pictures, resulting in RW sending appellant two images of herself engaged in sexually explicit conduct. Appellant later sent these two pictures to another individual who ultimately reported his conduct to law enforcement. At another point, appellant also asked RW to take a photo of herself masturbating with a hairbrush, but RW did not comply with this particular request. During this time period, appellant also told RW that he wanted to go to her house to have sex, that he wanted to kidnap and impregnate her, and that he wanted to "do [her] with [a] friend at the same time." Appellant also sent RW two pictures of his erect penis with his mobile phone.

During the providence inquiry, appellant readily admitted that he transmitted pictures of his erect penis to RW, indecently exposed his penis to RW, engaged in indecent language with RW, and attempted to persuade, induce, or entice RW to engage in unlawful sexual activity under § 2322(b), pursuant to clause 3 of Article 134, UCMJ. Specifically, appellant admitted that he intended to follow through with the sexual acts that he communicated to RW and described his conduct as a substantial step toward completing the plan. Before findings, the military judge ruled that the indecent conduct and indecent exposure specifications (Specifications

2

1 and 2, Charge I) constituted an unreasonable multiplication of charges for sentencing. Likewise, the military judge ruled that the specifications for indecent language and attempt to entice RW were an unreasonable multiplication of charges for sentencing (Specifications 1 and 2, Charge II) and merged the two specifications for sentencing.

## DISCUSSION

The prohibition against multiplicity is rooted in the constitutional and statutory restrictions against Double Jeopardy. *United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012). "[A]ppellate consideration of multiplicity claims is effectively waived by unconditional guilty pleas, except where the record shows that the challenged offenses are 'facially duplicative.'" *United States v. St. John*, __ M.J. __, 2013 WL 3187165, (Army Ct. Crim. App. 24 June 2011) (citing *United States v. Lloyd*, 46 M.J. 19, 23 (C.A.A.F. 1997). *See also United States v. Craig*, 68 M.J. 399, 400 (C.A.A.F. 2010); *United States v. Campbell*, 68 M.J. 217, 219 (C.A.A.F. 2009). Facially duplicative means the factual components of the charged offenses are the same. *St. John*, __ M.J. __, 2013 WL 3187165, at *2 (citations omitted). This court considers the factual conduct alleged in each specification and the providence inquiry conducted by the military judge in making this determination. *United States v. Hudson*, 59 M.J. 357, 359 (C.A.A.F. 2004). Whether multiple specifications are facially duplicative is a question of law reviewed de novo. *United States v. Pauling*, 60 M.J. 91, 94 (C.A.A.F. 2004).

This court analyzes whether offenses are multiplicious by determining whether each offense charged requires proof of an element the other does not. *United States v. Teeters*, 37 M.J. 370, 377 (C.M.A. 1993); *Blockburger v. United States*, 284 U.S. 299, 304 (1932). If not, the offenses are multiplicious. *Teeters,* 37 M.J. at 377; *Blockburger*, 284 U.S. at 304.

We find that the specifications for indecent exposure and indecent act are facially duplicative. It is clear that both sets of conduct alleged in the two separate specifications are exactly the same. Here, appellant stands convicted of committing an indecent act by sending one or more digital photographs of an erect penis to RW by means of a cellular telephone. In almost the exact same fashion, appellant also stands convicted of committing an indecent exposure by exposing his erect penis to RW by means of digital photograph, transmitted via cellular telephone.[1]

---

[1] Furthermore, the stipulation of fact uses the same set of facts to describe both specifications.

In light of the facial duplicity of these specifications, we look to the elemental test described in *Teeters* and *Blockburger* to determine multiplicity. As presently alleged, the specification for the indecent act does not require proof of an additional element not found in the specification for the indecent exposure. Conversely, proof of indecent exposure requires proof that the exposure was intentional and that it was made at a place where the conduct could reasonably be expected to be viewed by people other than members of the accused's family or household, which are not required for indecent act. Since only one specification contains an element that requires proof of additional facts, we hold these specifications to be multiplicious. Our determination that these offenses are multiplicious necessarily results in dismissal of the indecent exposure specification which constitutes the multiplied offense. *Campbell*, 71 M.J. at 23; Rule for Courts-Martial [hereinafter R.C.M.] 1003 (c)(1)(C). In any event, regardless of our multiplicity determination, the two specifications cannot support separate finding as they also constitute an unreasonable multiplication of charges for findings as well as sentencing.

We also set aside the findings for indecent language in Specification 1, Charge II. Pursuant to Rule for Courts–Martial 307(c)(4), "[w]hat is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." This principle is well established in military law. *See, e.g.*, *United States v. Redenius*, 4 U.S.C.M.A. 161, 15 C.M.R. 161 (1954). We consider five factors to determine whether charges have been unreasonably multiplied:

> (1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?;
>
> (2) Is each charge and specification aimed at distinctly separate criminal acts?;
>
> (3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?;
>
> (4) Does the number of charges and specifications [unreasonably] increase [the] appellant's punitive exposure?;
>
> (5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

4

ASHLEY — ARMY 20120566

*United States v. Quiroz*, 55 M.J. 334, 338 (C.A.A.F. 2001) (internal citation and quotation marks omitted)

In the same vein as Charge I and its Specifications, Charge II and its Specifications encompass a single set of conduct. During trial, the military judge noted, and the parties agreed, that all of the indecent language alleged in Specification 1 of Charge II was a subset of the language and actions that appellant used to attempt to persuade, induce, or entice RW to engage in sexual activity. Although the military judge considered these specifications an unreasonable multiplication of charges for sentencing, we further find that the specifications are likewise an unreasonable multiplication of charges for findings. Given that appellant's admitted indecent language was identical and a subset of the very same language supporting the attempted enticement charge, the balance of the second, third, and fourth, *Quiroz* factors heavily outweigh the other factors, and result in a finding that these two specifications constitute an unreasonable multiplication of charges.

## CONCLUSION

The findings of guilty of Specification 2 of Charge I and Specification 1 of Charge II are set aside and dismissed. The remaining findings of guilty are AFFIRMED. We find no significant change in the sentencing landscape as a result of setting aside and dismissing these specifications. Reassessing the sentence on the basis of the error noted, the entire record, and in accordance with the principles of *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986) and *United States v. Moffeit*, 63 M.J. 40 (C.A.A.F. 2006), the court affirms the sentence. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by this decision, are ordered restored. *See* Articles 58b(c) & 75(a), UCMJ.

Judge GALLAGHER concurs.

KRAUSS, Judge, concurring in part and in the result:

I write separately to address the maximum punishment appropriate for conviction of a violation of 18 U.S.C. § 2422(b) under Article 134 clause 3 in light of *United States v. Schell*, 72 M.J. 339 (C.A.A.F. 2013) and *United States v. Schell*, 71 M.J. 574 (Army Ct. Crim. App. 2012).

When the government prosecutes a Title 18 offense under Clause 3, Article 134, UCMJ, the maximum punishment for that offense is fixed by application of R.C.M. 1003(c)(1)(B). If, as in this case, 18 U.S.C. § 2422(b) is closely related to an offense listed in the Manual for Court-Martial, the maximum punishment for the

5

offense listed in the Manual for Courts-Martial applies. If not, the maximum listed for the offense under Title 18 applies. *See United States v. Middleton*, 12 U.S.C.M.A. 54, 30 C.M.R. 54 (1960); *United States v. Tenney*, 60 M.J. 838, 843 (N.M. Ct. Crim. App. 2005); R.C.M. 1003(c)(1)(B).

In *Schell*, our superior court joined other circuits in a judicial expansion of liability under 18 U.S.C. § 2422(b). Indeed, *Schell* broadens liability under this statute beyond that of the court's previous decisions and possibly that of any other jurisdiction. It is necessary to address how far we have come in order to resolve the nature of this offense, as it is now interpreted in our jurisdiction, and, therefore, the maximum punishment appropriate for this offense.

The *Schell* decision first rejects any requirement that an accused intend illegal sexual activity occur to be criminally liable for attempting to persuade entice or induce a minor to engage in illegal sexual activity. *Schell*, 72 M.J. at __. *But cf. United States v. Brooks*, 60 M.J. 495, 498 (C.A.A.F. 2005) (guilt predicated on accused's intent that illegal sexual activity occur); *United States v. Lundy*, 676 F.3d 444, 450–51 (5th Cir. 2012) (accused must intend and take substantial step toward bringing about or engaging in sexual activity); *United States v. Knope*, 655 F.3d 647, 660–-61 (7th Cir. 2011) (accused must intend and take substantial step toward bringing about or engaging in sexual activity); *United States v. Shinn*, 681 F.3d 924, 930–31 (8th Cir. 2012); *United States v. Kowalski*, 69 M.J. 705 (C.G. Ct .Crim. App. 2010); MANUAL OF MODEL CRIM. JURY INSTRUCTIONS FOR THE DIST. COURTS OF THE EIGHTH CIRCUIT § 6.18.2422B (2013 ed.) (accused must intend sexual activity occur as a result of attempt to persuade a minor to engage in illegal sex) .

Though our superior court previously rejected the requirement that a substantial step toward sexual activity be complete before liability perfects under § 2422(b), it did so premised on a case where necessary distinction between "hot air" and enticement to engage in illegal sex relies on the demonstrated intent that the sexual activity occur. *United States v. Winckelmann*, 70 M.J. 403, 407–08 (C.A.A.F. 2011) (citing *United States v. Gladish*, 536 F.3d 646, 649 (7th Cir. 2008). *See also United States v. Taylor*, 640 F.3d 255, 259–60 (7th Cir. 2011) (contemplating conviction under § 2422(b) as including intent that sexual activity involving physical contact occur). After *Schell*, it seems, application of the substantial step element no longer makes such a distinction.

Our superior court also declined to adopt the definition of intent, employed by a number of other jurisdictions, that require proof that the accused intended to obtain the minor's assent to illegal sexual activity to be criminally liable under § 2422(b). *See United States v. Berk*, 652 F.3d 132 (1st Cir. 2011); *United States v. Douglas*, 626 F.3d 161 (2d Cir. 2010); *United States v. Fugit*, 703 F.3d 248 (4th Cir.

2012); *United States v. Berg*, 640 F.3d 239 (7th Cir. 2011) (deviating from Judge Posner's approach in *Gladish* and *Taylor*); *United States v. Goetzke*, 494 F.3d 1231 (9th Cir. 2007); *United States v. Sumner*, No. 12-14557, 2013 WL 3287237 (11th Cir. July 1, 2013).

In those cases requiring an intent that sexual activity occur, a § 2422(b) offense is complete when illegal sexual activity occurs: a child persuaded, enticed, induced or coerced to engage in illegal sexual activity means the child engaged in sexual activity. For example, a child induced to engage in an act of prostitution means that the child engaged in an act of prostitution. Efforts to induce a minor to engage in illegal sexual activity that fail because of an independent or intervening cause constitute an attempted § 2422(b) offense. *See, e.g., United States v. Young*, 613 F.3d 735 (8th Cir. 2010). *See also Brooks* 60 M.J. at 499.

In cases where the "minor's assent" definition of intent is applied, a § 2422(b) offense is complete when the minor agrees to engage in illegal sexual activity. When the minor refuses, you have an attempt. *Goetzke* 494 F.3d at 1237.[2]

Rather than define the intent element of this offense, our Court of Appeals offers definition of the words persuade, induce and entice and regards them as interchangeable. *Schell*, 72 M.J. __ n.1. However *Schell* employs these words in a fashion contrary to their traditional meanings under the UCMJ. For example, the definition of entice includes "[t]o lure" and "to wrongfully solicit (a person) to do something." *Id.* (internal quotation marks omitted). Wrongful solicitation under Articles 82 and 134, UCMJ, require the solicitor intend the solicited offense actually occur. *United States v. Gladue*, 67 M.J. 311, 316 (C.A.A.F. 2009); *United States v. Mitchell*, 15 M.J. 214, (C.M.A. 1983); *Manual for Courts-Martial, United States* (2008 ed.) [hereinafter *MCM*], pt. IV, ¶¶ 6 & 105. Similarly, under the crime of kidnapping, "'[i]nveigle' means to lure, lead astray, or entice by false representations or other deceitful means. For example, a person who entices another to ride in a car with a false promise to take the person to a certain designation has inveigled the passenger into the car." *United States v. Blocker*, 32 M.J. 281, 285 (C.M.A. 1991) (quoting *MCM*, pt. IV, ¶ 92.c.(1). When you intend to inveigle someone you don't intend to merely alter their attitude about getting into the car. For the same offense, "decoy means to entice or lure by means of some fraud, trick, or temptation. For example, one who lures a child into a trap with candy has

---

[2] Of course, in either case, an undercover agent posing as a minor renders the effort an attempt.

decoyed the child." *Id.* The idea of the crime of attempted kidnapping, of course, is to punish those who try to get the child into the trap.

On their face, it might appear that the offenses of patronizing and pandering prostitution under Article 134, UCMJ, are closely related to § 2422(b) as both can also be accomplished by inducement or enticement. However, each of those offenses contemplates an actual act of prostitution as the intended objective that is prerequisite to guilt. *See United States v. Miller*, 47 M.J. 352, 356–57 (C.A.A.F. 1997); *MCM*, pt. IV, ¶ 97.

*Schell* removes any requirement that the supposed objective of persuasion, that is prostitution or other illegal sexual activity, be intended for purposes of § 2422(b) under Article 134, UCMJ. Illustrative of the consequence is the fact that it will therefore no longer be necessary for our courts to entertain any defense involving innocent explanation for the act of enticement such as fantasy, or prank or some sort of innocent curiosity. *Cf. Brooks* 60 M.J. at 499 (court entertained and debunked appellant's assertion that he didn't intend a minor actually engage in illegal sexual activity but rather only intended to discover if his friends were playing a prank on him). This reduces the intent required to that merely of intending to utter speech in some fashion that can be styled as persuasion on the subject of illegal sex. As such, it is now, in the wake of *Schell*, akin to the crimes of indecent liberty with a child and indecent language. *See, e.g., United States v. White*, 62 M.J. 639, 642–43 (N.M. Ct. Crim. App. 2006) (indecent language completed by communication of sexually themed messages without any intent that sexual acts occur) (citing *United States v. Brinson*, 49 M.J. 360, 364 (C.A.A.F. 1998)); *MCM*, pt. IV, ¶¶ 45.a.(j), 45.a. (t)(11), 89.

It is interesting to note that where the United States Congress failed to affix a five year maximum sentence to sexually explicit communication with a minor for the purposes of engaging in sexual activity with the minor, a soldier now, by judicial decision, may be subject to life in prison for decidedly less serious conduct. *See United States v. Schell*, 71 M.J. 574, 580–81 (Army Ct. Crim. App. 2012). Judge Posner, upon study of the subject, found "nothing in the 1998 amendment [to § 2422(b)] or its discussion by members of Congress to suggest a legislative purpose of subjecting less serious sexual misconduct (misconduct involving no physical contact) to the draconian penalties in subsection (b)." *Taylor*, 640 F.3d at 258 (discussing the sexual activity that is object of the persuasion).

Recognizing the limited use that legislative history and failed amendments may provide the judicial interpretation of statutes, they can inform our decision. *Schell*, 72 M.J. at __; *United States v. Bennitt* 72 M.J. 266, 269–71 (C.A.A.F. 2013) It is unjust to subject an accused to greater punishment for a less serious offense

8

than those otherwise necessarily implicated. *Miller*, 47 M.J. at 356-57. The Rules for Courts-Martial prevent such injustice by requiring the lesser punishment of closely related offenses. R.C.M. 1003(c)(B)(i).

In this case we have an honest accused speaking plain English when admitting that he intended to persuade a minor to engage in illegal sexual activity, in other words he was actually trying to get the girl to have sex with him. No need for doublethink to affirm this conviction. However, the maximum punishment must be fixed by the nature of the offense under R.C.M. 1003 not the nature of the accused's particular admissions. Here, appellant's acts committing the § 2422(b) offense constituted his commission of the indecent language offense. Indecent language is not a lesser included offense to the § 2422(b) offense. Indeed, arguably, § 2422(b), as now interpreted in the military, requires a less culpable intent than indecent language which requires an accused intend to corrupt morals or incite libidinous thoughts and use language calculated to do that. *Brinson*, 49 M.J. at 364. In any event, indecent language is now closely related to § 2422(b) and the maximum punishment of two years for communicating such language to a minor is the appropriate maximum punishment for the § 2422(b) offense rather than life in prison.[3] *See Tenney*, 60 M.J. at 843.

Though the maximum appellant should have faced is therefore significantly less than life, it remains to include the possibility of confinement for 57 years and 6 months. Considering "all of the circumstances of the case presented by the record", including the terms of appellant's pretrial agreement, I find that, under the circumstances of this case, misapprehension of the maximum punishment did not affect appellant's plea of guilty. *See United States v. Poole*, 26 M.J. 272, 274 (C.M.A. 1988); *United States v. Dawkins*, 51 M.J. 601, 605 (Army Ct. Crim. App. 1999).

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[3] This calculation, as well as resolution of preemption questions, may change for offenses committed after June 2012. *See* Articles 120b(c) & (h)(5), 10 U.S.C. § 920b (2012).

9